**HODGES & FOTY, L.L.P.**
**David W. Hodges**
Texas State Bar No. 00796765
**\*\*Pro Hac Vice Forthcoming*
**Michael Goldsmith**
Texas State Bar No. 24120856
**\*\*Pro Hac Vice Forthcoming*
mgoldsmith@hftrialfirm.com
4409 Montrose Blvd., Suite 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

ATTORNEY FOR PLAINTIFFS AND CLASS MEMBERS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MALAIKA WASHINGTON and INGRID ALATORRE, on behalf of Themselves and on behalf of all other similarly situated individuals,<br><br>        Plaintiffs,<br><br>v.<br><br>FREEDOM OF EXPRESSION, L.L.C. d/b/a Bones Cabaret; WISNOWSKI, INC. d/b/a Skin Cabaret; SKIN CABARET LLC; TODD BOROWSKY, Individually; and ERIKA DONALDSON, Individually;<br><br>        Defendants. | CASE NO. _____<br><br>ORIGINAL COLLECTIVE ACTION COMPLAINT AND JURY DEMAND |

## I. <u>SUMMARY</u>

1.      Freedom of Expression, L.L.C., d/b/a Bones Cabaret, Wisnowski, Inc., d/b/a Skin Cabaret, Skin Cabaret LLC, Todd Borowsky, and Erika Donaldson (hereinafter collectively referred to as "Defendants"), required Malaika Washington and Ingrid

Alatorre, (hereinafter "Plaintiffs") to work as an exotic dancer at their adult entertainment clubs, but refused to compensate her at the applicable minimum wage.

2.      Specifically, Defendants misclassified dancers, including Plaintiffs, as independent contractors. Plaintiffs' only compensation was in the form of tips from club patrons; the clubs paid no wages. In fact, Defendants required Plaintiffs to pay a "house fee" in order to work in the clubs. Essentially, Defendants took money from Plaintiffs under the premise that they had to pay for their space at the clubs. Plaintiffs were also required to share their tips with Defendants and their employees who do not customarily receive tips outside of a valid tip pool.

3.      As a result, Defendants failed to pay Plaintiffs and all other members of the class collective minimum wage compensation, which they were entitled to under the Fair Labor Standards Act ("FLSA") and Arizona state labor law including The Fair Wages and Healthy Families Act.

4.      Plaintiffs bring this class and collective action against Defendants seeking damages, backpay, restitution, liquidated damages, prejudgment interest, reasonable attorney's fees and costs, and all other relief that the Court deems just, reasonable, and equitable in the circumstances.

## II.      SUBJECT MATTER JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action under 29 U.S.C. §216(b), 28 U.S.C. §1331, and Arizona Revised Statutes § 23-364.

6.      This Court also has supplemental jurisdiction over the state law claims raised herein pursuant to 28 U.S.C. §1367 because such claims do not raise novel or complex issues of state law, and because those claims derive from a common nucleus of operative facts from which the FLSA claims stated herein derive.

7.      Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events forming the basis of this suit occurred in this District, and Defendants operate adult entertainment clubs located in this District.

## III.      PARTIES AND PERSONAL JURISDICTION

2

8.     Plaintiff Malaika Washington is an individual residing in Maricopa County, Arizona. She has worked for Defendant Freedom of Expression, L.L.C., d/b/a Bones Cabaret in Scottsdale, Arizona from August 2017 to August 2019, on a consistent basis. Additionally, she worked for Defendant Skin Cabaret LLC in Scottsdale, Arizona from August 2017 to September 2018, on a consistent basis. She lived in Arizona and was Defendants' employee. Her consent is attached hereto as Exhibit "A."

9.     Plaintiff Ingrid Alatorre is an individual residing in Maricopa County, Arizona. She has worked for She has worked for Defendant Freedom of Expression, L.L.C., d/b/a Bones Cabaret in Scottsdale, Arizona from September 2018 to January 2020, on a consistent basis. Additionally, she worked for Defendant Skin Cabaret LLC in Scottsdale, Arizona from June 2020 to October 2020 on a consistent basis. She lived in Arizona and was Defendants' employee. Her consent is attached hereto as Exhibit "B."

10.    Opt-in Plaintiffs are current or former exotic dancers who have worked at Defendants' adult entertainment clubs within the applicable limitations period and will file a valid consent to join this suit with the Court.

11.    The Rule 23 Class Members are all current and former exotic dancers who worked at Defendants' adult entertainment club at any time starting three years before this Complaint was filed, up to the present.

12.    Defendant Freedom of Expression, L.L.C., d/b/a Bones Cabaret, is an Arizona for-profit corporation doing business in Scottsdale, Arizona. Defendant may be served with process via its registered agent, Peter H. Schelstraete, at 60 East Rio Salado Parkway, Suite 900, Tempe, Arizona 85281.

13.    Skin Cabaret LLC is an Arizona for-profit corporation doing business in Scottsdale, Arizona. Defendant may be served with process via its registered agent, Todd Borowsky, at 22214 North La Senda, Scottsdale, AZ 85255.

14.    Wisnowski Inc. is an Arizona for-profit corporation doing business in Scottsdale, Arizona. It is a co-owner of Skin Cabaret. Defendant may be served with

process via its registered agent, Peter Schelstraete, at 60 East Rio Salado Parkway, Suite 900, Tempe, AZ 85281.

15.    Defendant Todd Borowsky is an individual who resides in Maricopa County, Arizona. He is the owner of both Freedom of Expression, L.L.C., d/b/a Bones Cabaret, Skin Cabaret LLC, and is the director and president of Wisnowski, Inc. He may be served with process at 6130 East Cholla Lane, Scottsdale, Arizona 85253, or wherever he may be found.

16.    Defendant Erika Donaldson is an individual who resides in Maricopa County, Arizona. She was the general manager of Skin Cabaret during the statutory period. She may be served with process at 3513 N. Apache Way, Scottsdale, Arizona 85252, or wherever she may be found.

17.    This Court has personal jurisdiction over Defendant Freedom of Expression, L.L.C., d/b/a Bones Cabaret, because it is doing business in Arizona.

18.    This Court has personal jurisdiction over Defendant Skin Cabaret LLC because it is doing business in Arizona.

19.    This Court has personal jurisdiction over Defendant Wisnowski, Inc., because it is doing business in Arizona.

20.    This Court has specific personal jurisdiction over Defendant Freedom of Expression, L.L.C., d/b/a Bones Cabaret, because it does business in Scottsdale, Arizona and Plaintiff's claims arise from the conduct of that business.

21.    This Court has specific personal jurisdiction over Defendant Skin Cabaret LLC because it does business in Scottsdale, Arizona and Plaintiff's claims arise from the conduct of that business.

22.    This Court has personal jurisdiction over Defendant Todd Borowsky because he resides in Maricopa County, Arizona.

23.    This Court has personal jurisdiction over Defendant Erika Donaldson because she resides in Maricopa County, Arizona.

IV.    **COVERAGE**

4

24.     At all material times, Defendants have been employers within the meaning of 3(d) of the FLSA, 29 U.S.C. § 203(d) of Ariz. Rev. Stat. Ann. § 23-350(3), and § 23-362(B) of Ariz. Rev. Stat. Ann.

25.     The Fair Labor Standards Act ("FLSA") defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee."  29 U.S.C. § 203(d).

26.     Similarly, Arizona defines "employer" broadly to include "any corporation, proprietorship, partnership, joint venture, limited liability company, trust, association, political subdivision of the state, individual or other entity acting directly or indirectly in the interest of an employer in relation to an employee, but does not include the state of Arizona, the United States, or a small business." ARIZ. REV. STAT. ANN. § 23-362(B).

27.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because they have had employees engaged in commerce. 29 U.S.C. § 203(s)(1).

28.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of $500,000.

29.     At all material times, Plaintiffs, FLSA Class Members, and Arizona Class Members were individual employees as defined by 29 U.S.C § 206-207 and Ariz. Rev. Stat. Ann. § 23-362(A).

30.     Wisnowski, Inc. is an employer under the FLSA because it 1) has the power to hire and fire the dancers and other employees, 2) supervises and controls employee work schedules or conditions of employment, 3) determines the rate and method of payment, and 4) is the entity responsible for maintaining employment records.

31.     Defendant Todd Borowsky is the owner of Defendants Freedom of Expression, L.L.C., d/b/a Bones Cabaret, and Skin Cabaret LLC. As the owner, Defendant Todd Borowsky is an employer because he 1) has the power to hire and fire the dancers and other employees, 2) supervises and controls employee work schedules or conditions of

employment, 3) determines the rate and method of payment, and 4) is the entity responsible for maintaining employment records. Additionally, Defendant was responsible for the day-to-day affairs of Freedom of Expression, L.L.C., d/b/a Bones Cabaret, and Skin Cabaret LLC, specifically for determining whether they complied with the FLSA.

32.    Defendant Erika Donaldson was the general manager of Defendants Skin Cabaret.

33.    As manager, Defendant Donaldson employed the Plaintiffs, FLSA Class Members, and Arizona Class Members as employees who danced for and entertained customers.

34.    Defendant Donaldson controlled the nature, pay structure, and employment relationship of Plaintiffs, FLSA Class Members, and Arizona Class Members.

35.    At all material times, Defendant Donaldson 1) had the power to hire and fire the dancers and other employees, 2) supervised and controlled employee work schedules or conditions of employment, 3) determined the rate and method of payment, and 4) was the entity responsible for maintaining employment records. Additionally, Defendant was responsible for the day-to-day affairs of Skin Cabaret, specifically for determining whether they complied with the FLSA.

36.    For all intents and purposes, Defendants Wisnowski, Inc; and Skin Cabaret LLC are effectively the same company and operate as a single enterprise. Despite the corporate fragmentation, a "single enterprise" under the FLSA exists. *See Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir. 1984). The Defendants share the same officers and directors, such as Todd Borowsky. In fact, Todd Borowsky oversees and controls the operations of each Defendant.

37.    The Defendants also operate in a unified manner and under common control. They share the same corporate office located at 1137 N. Scottsdale Road, Scottsdale, AZ 85257. They also have the same accounting and payroll operations. Additionally, they share control over hiring, firing, payroll, and overhead decisions. They have the same officer and director, Todd Borowsky.

38.     Moreover, the Defendants have a common business purpose to operate a gentlemen's clubs for profit under the name "Skin Cabaret."

39.     Based upon these facts, at all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose. *See Brennan v. Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Reich v. Bay, Inc.*, 23 F.3d 110, 113 (5th Cir. 1994). Additionally, based upon these facts, Defendants are joint employers and are jointly and severally liable for all wage and hour compliance, including the payment of overtime and minimum wage compensation. See 29 C.F.R. § 791.2(a); *Schultz v. Capital International Security, Inc.*, 466 F.3d 298, 306 (4th Cir. 2006).

40.     Defendants Wisnowski, Inc.; and Skin Cabaret LLC are mere instrumentalities or alter egos of each other and each Defendant is vicariously liable for the violations committed by each other.

## V.     **FACTS**

41.     Defendants operate the adult entertainment clubs in Scottsdale, Arizona under the names of "Bones Cabaret" and "Skin Cabaret" ("The Clubs").

42.     Defendants employ exotic dancers and have employed hundreds of dancers over the years at The Clubs.

43.     Plaintiffs were previously employed as an exotic dancer at Skin Cabaret and Bones Cabaret during the statutory time period.

44.     Plaintiffs worked on a regular basis for Defendants' establishments, both located in Scottsdale, Arizona.

45.     Plaintiff Washington worked at Bones Cabaret from August 2017 to August 2019.

46.     Plaintiff Washington worked at Skin Cabaret from August 2017 to September 2018.

47.     Plaintiff Washington worked, on average, five hours per shift during her employment at Bones Cabaret and five shifts per week for a total of twenty-five hours per week.

48.     Plaintiff Washington worked, on average, six hours per shift during her employment at Skin Cabaret and four shifts per week for a total of twenty-four hours per week.

49.     Plaintiffs never received any wages during their employment with The Clubs.

50.     During at least one workweek between August 2017 to present, Defendants did not pay Plaintiff Washington the state or federally mandated minimum wage. As an illustrative example, starting in the first week of August 2017 that she worked for Defendants as a dancer, and continuing until the end of her employment with The Clubs, Plaintiff was not paid a minimum wage.

51.     Plaintiff Alatorre worked at Bones Cabaret from September 2018 to January 2020.

52.     Plaintiff Alatorre worked at Skin Cabaret from June 2020 to October 2020.

53.     Plaintiff Alatorre worked, on average, seven hours per shift during her employment at Bones Cabaret and five shifts per week for a total of thirty-five hours per week.

54.     Plaintiff Alatorre worked, on average, eight hours per shift during her employment at Skin Cabaret and five shifts per week for a total of forty hours per week.

55.     During at least one workweek between September 2018 to present, Defendants did not pay Plaintiff Alatorre the state or federally mandated minimum wage. As an illustrative example, starting in the first week of September 2018 that she worked for Defendants as a dancer, and continuing until the end of her employment with The Clubs, Plaintiff was not paid a minimum wage.

56.     Similarly, Opt-In Plaintiffs and Arizona Class Members did not work a single hour at The Clubs where they were paid the federally mandated minimum wage of

8

$7.25 an hour or the state mandated minimum wage of $12.15 under Arizona Revised Statutes § 23-363 effective January 1, 2021. The previous minimum wages in Arizona during the relevant time periods are as follows: $12 in 2020, $11 in 2019, $10.50 in 2018, and $10 in 2017.

57.     In fact, Plaintiffs and the FLSA class paid to work at The Clubs. Plaintiffs and FLSA Class Members were classified by Defendants as independent contractors who had to pay house fees to dance at The Clubs.

58.     Plaintiffs, FLSA Class Members, and Arizona Class Members were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay them whatsoever for any hours worked at their establishment.

59.     Furthermore, Defendants charged Plaintiffs and FLSA Class Members a "house fee" per shift worked. In other words, they had to pay to work at The Clubs and sometimes completed a full shift only to owe The Clubs money.

60.     Defendants also required Plaintiffs and Class Members to share their tips with other non-service employees who do not customarily receive tips.

61.     Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour. Defendants also violated § 203(m) when they failed to notify Plaintiffs about the tip credit allowance before the credit was utilized, meaning Defendants' exotic dancers were never made aware of how the tip credit allowance worked or the amounts to be credited.

62.     Defendants additionally violated § 203(m) because they did not allow Plaintiffs to retain all their tips, but instead required Plaintiffs and Class Members to share their tips with other non-service employees who do not customarily receive tips. Because Defendants violated the tip-pool law, Defendants lose the right to take a credit toward minimum wage.

63.     Furthermore, Defendants are in violation of Arizona's tipped-employee compensation provision, ARIZ. REV. STAT. ANN. § 23-363(C), which provides that "the

employer may pay a wage up to $3.00 per hour less than the minimum wage if the employer can establish . . . that for each week, when adding tips received to wages paid, the employee received not less than the minimum wage for all hours worked." Defendants failed to compensate Plaintiffs with wages for any hours worked in violation of the Arizona Minimum Wage Act.

64.     Plaintiffs and Class Members received tips and/or dance fees from Defendant's customers but no other form of payment from their employer.

65.     The money received by the clubs after a shift of dance performances was not included in Defendants' gross sales receipts and was not disbursed in any way as wages to any workers.

66.     Defendants illegally classified the dancers as independent contractors. However, at all times, Plaintiffs and Opt-In Plaintiffs were employees of Defendants under the FLSA. At all times, Defendants required Plaintiffs and other exotic dancers to perform private and semi-private dances under the pricing guidelines, policies, procedures, and promotions set exclusively by Defendants.

67.     Defendants hired/fired, issued pay, supervised, directed, disciplined, and performed all other duties generally associated with that of an employer with regard to the dancers.

68.     The following non-exhaustive list of policies and procedures in effect during the relevant statutory period demonstrates the dancers' status as employees and/or supports their claims:

        a.     Defendants have the sole right to hire and fire the dancers;

        b.     Defendants make dancers pay a house fee to work at the premises and the fee varies depending on the night;

        c.     Defendants forced dancers to pay "house fees" to dance in The Clubs;

        d.     Plaintiffs paid, on average, $55 per shift as a house fee, to dance on stage at Bones Cabaret;

        e.     Plaintiffs paid, on average, $40 per shift as a house fee, to dance on

stage at Skin Cabaret;

f.   Defendants created an incentive to arrive early, the house fee increased as the day went on;

g.   Defendants require dancers pay a $45 late fee upon arriving late;

h.   Defendants charged dancers a fine to leave early;

i.   Defendants exercised sole control over how much a dancer can charge a third-party customer;

j.   Defendants set the price for private dances and VIP room dances;

k.   Defendants unilaterally makes the decision not to pay any wages to dancers;

l.   Defendants provide the dancers with music, stages, poles, and other tools to perform dances; the dancer only provides her own body;

m.   Dancers make no financial investment with Defendants' business;

n.   Defendants mandate that dancers pay a mandatory tip out of $80 per shift to other club employees at The Clubs, including to the managers, security, and DJs;

o.   Defendants mandate that dancers pay a mandatory tip out of $5 per dance to The Clubs;

p.   Defendants mandate that dancers pay a mandatory tip out of 40% of the VIP dance fees when customers pay for VIP dances with credit cards;

q.   Defendants apply fines/fees to the dancers if they fail to follow Defendants' guidelines or directions;

r.   Defendants maintain the premises – including the stage, and a state-of-the-art audio set up;

s.   Defendants hire and fire all employees of the clubs – including dancers, DJ's, bouncers, and managers;

t.   Defendants employ dozens of dancers at one time;

u.  Dancers are not responsible for paying any facility expenses relating to the operation of The Clubs;

v.  Defendants have sole control over their opportunity for profit or loss; maintaining exclusive control over major determinants of customer volume such as marketing, advertising, business hours, facility maintenance, aesthetics, beverage inventory, and setting the cover charge price profit;

w.  Dancers have no control over the key determinants of profit and loss;

x.  Defendants employ many dancers, including the named Plaintiff, for several months at least.

69.     Defendants misclassified Plaintiffs, FLSA Class Members, and Arizona Class Members as independent contractors to avoid Defendants' obligation to pay them pursuant to the FLSA.

70.     Plaintiffs, FLSA Class Members, and Arizona Class Members constituted the workforce without which Defendants could not perform their services.

71.     Plaintiffs, FLSA Class Members, and Arizona Class Members are not exempt from the minimum wage requirements under the FLSA and Arizona state labor laws.

72.     Defendants' method of paying Plaintiffs and Class Members in violation of the FLSA is willful and is not based on a good faith and reasonable belief that their conduct complied with the FLSA.

73.     Defendants' method of paying Plaintiffs and the Arizona Class Members was in violation of the Arizona Minimum Wage Act and Arizona Wage Law and was willful and not based on a good faith and reasonable belief that its conduct complied with Arizona Law.

74.     Defendants misclassified Plaintiffs, FLSA Class Members, and Arizona Class Members with the sole intent to avoid paying them in accordance with the FLSA. There are multiple federal court opinions finding that this method of compensation is in

violation of the FLSA, and therefore, Defendants' conduct is willful.

75.     Defendants' conduct is willful because the District Court of Arizona previously awarded a judgment against Defendants in an action brought under the FLSA for these same compensation methods.

## VI.     EQUITABLE TOLLING

76.     The doctrine of equitable tolling preserves a plaintiff's full claim when a strict application of the statute of limitations would be inequitable. *See Partlow v. Jewish Orphans' Home of S. Cal., Inc.*, 645 F.2d 757, 760–61 (9th Cir. 1981) (abrogated on other grounds by *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989)).

77.     Equitable tolling is proper when an employer has engaged in misleading conduct. Defendants intentionally misled the Plaintiffs into believing that they were not required to pay them minimum wage. Defendants coerced the Plaintiffs, FLSA Class Members, and Arizona Class Members into believing that they were independent contractors. Consequently, the Plaintiffs, FLSA Class Members, and Arizona Class Members were victims of fraud and unable to ascertain any violation taking place.

78.     Thus, the statute of limitations for the Plaintiffs, FLSA Class Members, and Arizona Class Members should be equitably tolled due to Defendants' fraudulent concealment of the Plaintiffs', FLSA Class Members' and Arizona Class Members' rights. Plaintiffs therefore seek to have the limitations period extended from the first date that Defendants used this covert payroll practice up to the time each Plaintiff joins this lawsuit.

## VII.     CAUSES OF ACTION

### COUNT I: FAILURE TO PAY FEDERAL MINIMUM WAGE (COLLECTIVE ACTION)

79.     Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

80.     Defendants' willful practice of failing to pay Plaintiffs and FLSA Class Members at the required minimum wage rate violates the FLSA and was not based in good

faith. 29 U.S.C. § 206. In fact, Defendants do not compensate them whatsoever for any hours worked and have violated the tip credit provision under the FLSA as described above.

81.     The FLSA required that Defendants allow Plaintiffs and other similarly situated exotic dancers to keep all tips and gratuities received from customers. As set forth above, Defendants failed to pay Plaintiffs and other similarly situated exotic dancers at hourly rates in compliance with the FLSA Federal Minimum Wage requirements. Without legal excuse or justification, Defendants kept and/or assigned to management tips and gratuities received by Plaintiffs and other exotic dancers and belonging to Plaintiff and other exotic dancers.

82.     As also alleged above, Defendants' practice of collecting house fees from the dancers also violates the law.

83.     None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to the Defendants or the Plaintiffs.

## COUNT II: VIOLATION OF ARIZONA STATE LABOR LAWS FOR FAILURE TO PAY MINIMUM WAGE (CLASS ACTION)

84.     Plaintiffs and Arizona Class Members incorporate by reference all allegations in the preceding paragraphs.

85.     Under Arizona Revised Statutes § 23-363, effective January 1, 2021, the state minimum wage is currently $12.15. The previous minimum wages in Arizona during the relevant time periods are as follows: $12 in 2020, $11 in 2019, $10.50 in 2018, and $10 in 2017.

86.     As set forth above, Defendants failed to pay Plaintiffs and other similarly situated exotic dancers at hourly rates in compliance with the Arizona minimum wage requirements.

87.     Without legal excuse or justification, Defendants kept and/or assigned to management tips and gratuities received by Plaintiffs and other exotic dancers and

belonging to Plaintiffs and other exotic dancers. Defendants also charged house fees illegally.

88.     Defendants' failure to pay Plaintiffs and other similarly situated exotic dancers as required by Arizona state laws was willful and intentional and was not in good faith.

### COUNT III: UNLAWFUL TIP SHARING (COLLECTIVE ACTION)

89.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

90.     As set forth above, Defendants' failure to allow their exotic dancers to retain all their tips by requiring them to "tip out" employees who do not customarily and regularly receive tips violates the Fair Labor Standards Act, 29 U.S.C. § 203(m). Plaintiffs bring this claim on behalf of themselves, and all others similarly situated pursuant to 29 U.S.C. § 216(b).

### COUNT IV: VIOLATION OF ARIZONA WAGE LAW FAILURE TO PAY WAGES DUE (CLASS ACTION)

91.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

92.     Defendants' practice of willfully failing to pay Plaintiffs and Arizona Class Members wages for labor performed violates Arizona Wage Law. ARIZ. REV. STAT. ANN. § 23-351(C). In fact, Defendants do not compensate them whatsoever for any hours worked.

### COUNT V: UNJUST ENRICHMENT (CLASS ACTION)

93.     Due to the facts as pled above, Plaintiffs had conferred a benefit upon the Defendants. The Defendants had knowledge of the benefit conferred and continued to retain that benefit undeservedly. Defendants voluntarily accepted and retained such benefit, because Plaintiffs worked for Defendants, Defendants permitted Plaintiffs to work for the

business, and because Defendants chose to maximize the business's profit at the expense of Plaintiffs and Class Members.

94.     It would be inequitable and unjust for Defendants to continue to retain the benefit, as Plaintiffs conferred a benefit on Defendants which Defendants kept for themselves.

## VIII.   COLLECTIVE AND CLASS ALLEGATIONS

### A.     FLSA Class Members

95.     Plaintiffs bring this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers at any time during the three years prior to the commencement of this action to present.

96.     Plaintiffs have actual knowledge that FLSA Class Members have also been denied pay at the federally mandated minimum wage rate. That is, Plaintiffs worked with other dancers who worked at The Clubs. As such, Plaintiffs have first-hand personal knowledge of the same pay violations at The Clubs for other dancers. Furthermore, other exotic dancers at Defendants' establishment have shared with Plaintiffs similar pay violation experiences, including wage and tip confiscations, as those described in this complaint.

97.     Other employees similarly situated to Plaintiffs work or have worked for Defendants' gentlemen's club business but were not paid at the federally mandated minimum wage rate.

98.     FLSA Class Members perform or have performed the same or similar work as Plaintiffs.

99.     FLSA Class Members are not exempt from receiving pay at the federally mandated minimum wage rate under the FLSA.

100.     As such, FLSA Class Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of minimum wage.

101.    Defendants' failure to pay for hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Class Members.

102.    The experiences of Plaintiffs, with respect to their pay, are typical of the experiences of the FLSA Class Members.

103.    The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

104.    All FLSA Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

105.    Although the exact amount of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can easily be calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all FLSA Class Members.

106.    As such, Plaintiffs brings their FLSA minimum wage claims as a collective action on behalf of the following class:

**The FLSA Class Members are all of Defendants' current and former exotic dancers who worked for Defendants at any time starting three years before this lawsuit was filed up to the present.**

**B.    Arizona Class Action**

107.     Plaintiffs and the Arizona Class Members incorporate all preceding paragraphs as though fully set forth herein.

108.    Plaintiffs bring their Arizona wage claims as a Rule 23 class action on behalf of the following class:

**All of Defendants' current and former exotic dancers who worked for Defendants at any time starting three years before this lawsuit was filed up to the present.**

109.     <u>Numerosity</u>. The number of members in the Arizona Class is believed to be well over forty. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Arizona Class as a plaintiff in this action is impracticable. Furthermore, the identity of the members of the Arizona Class may be determined from Defendants' employment files, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Arizona Class and Defendants.

110.     <u>Typicality</u>. Plaintiffs' claims are typical of the Arizona Class because, like the members of the Arizona Class, Plaintiffs were subject to Defendants' uniform policies and practices and were compensated in the same manner as others in the Arizona Class. Defendants failed to pay non-exempt employees who worked at The Clubs minimum wage for all of their hours worked. Plaintiffs and the Arizona Class have been uncompensated and/or under-compensated as a result of Defendants' common policies and practices which failed to comply with Arizona law.

111.     <u>Adequacy</u>. Plaintiffs are a representative party who will fairly and adequately protect the interests of the Arizona Class because it is in their interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Arizona law. Plaintiffs have retained attorneys who are competent in both class actions and wage and hour litigation. Plaintiffs do not have any interest which may be contrary to or in conflict with the claims of the Arizona Class she seeks to represent.

112.     <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

> a.     Whether Defendants failed to pay Plaintiffs and the Arizona Class the minimum wage for all hours worked; and
> b.     Whether Defendants took wages and tips from dancers to run their business in violation of Arizona Wage Laws.

18

113.    The common issues of law include, but are not limited to:

a.      Whether Defendants improperly classified Plaintiffs and the Arizona Class as independent contractors;

b.      Whether Plaintiffs and the Arizona Class are entitled to compensatory damages;

c.      The proper measure of damages sustained by Plaintiffs and the Arizona Class; and

d.      Whether Defendants' actions were "willful."

114.    <u>Superiority</u>. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Arizona Class could afford to pursue individual litigation against a company the size of Defendants, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Arizona Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

115.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Arizona Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. The identity of members of the Arizona Class are readily identifiable from Defendants' records.

116.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on the Defendants to prove they properly compensated their employees; and (3) the burden is on the Defendants to accurately record hours worked by employees.

117.    Ultimately, a class action is a superior forum to resolve the Arizona claims

detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiffs and the Arizona Class according to applicable Arizona laws.

118.     <u>Nature of notice to be proposed</u>. As to the Rule 23 Class, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, i.e., "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Arizona class by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

## IX.     DAMAGES SOUGHT

119.     Plaintiffs, FLSA Class Members, and Arizona Class Members are entitled to recover compensation for the hours they worked for which they were not paid at the mandated minimum wage rate under state law and federal law.

120.     Plaintiffs, FLSA Class Members, and Arizona Class Members are also entitled to recover all of the money Defendants misappropriated, such as house fees, forced tips, and wages taken after their performances.

121.     Plaintiffs and FLSA Class Members are also entitled to an award of statutory liquidated damages in amounts prescribed by the FLSA.

122.     Plaintiffs and Arizona Class Members are also entitled to an award of statutory treble damages in amounts prescribed by Arizona Revised Statutes § 23-355(A).

123.     Plaintiffs and FLSA Class Members are also entitled Prejudgment and post-judgment interest on unpaid back wages pursuant to the FLSA.

124.     Plaintiffs, FLSA Class Members, and Arizona Class Members are also entitled to an award of attorneys' fees and costs under the FLSA and Arizona state labor laws.

## PRAYER FOR RELIEF

For these reasons, Plaintiffs, FLSA Class Members, and Arizona Class Members respectfully request that judgment be entered in their favor awarding the damages requested above. Plaintiffs also requests for such other and further relief to which Plaintiffs,

1   FLSA Class Members, and Arizona Class Members may be entitled, at law or in equity.

2

3                                      Respectfully submitted,

4
                                       By:  /s/ *David W. Hodges*
5                                      David W. Hodges
6                                      **HODGES & FOTY, L.L.P.**
                                       Texas State Bar No. 00796765
7                                      **\*\*Pro Hac Vice Forthcoming*
8                                      dhodges@hftrialfirm.com
                                       Michael Goldsmith
9                                      Texas State Bar No. 24120856
                                       **\*\*Pro Hac Vice Forthcoming*
10                                     mgoldsmith@hftrialfirm.com
11                                     4409 Montrose Blvd., Suite 200
                                       Houston, TX 77006
12                                     Telephone: (713) 523-0001
                                       Facsimile: (713) 523-1116
13

14                                     ATTORNEY IN CHARGE FOR PLAINTIFFS AND
                                       CLASS MEMBERS
15

16

17

18

19

20

21

22

23

24

25

26

27

28