1  Laurent R.G. Badoux (SBN: 020753)
   Glenn B. Hotchkiss (SBN: 012194)
2  BUCHALTER, A PROFESSIONAL
   CORPORATION
3  15279 North Scottsdale Road, Suite 400
   Scottsdale, AZ 85254-2659
4  Telephone: (480) 383-1800
   Facsimile: (480) 824-9400
5  Email:  lbadoux@buchalter.com
           ghotchkiss@buchalter.com
6
   *Attorneys for Defendants*
7

8                 IN THE UNITED STATES DISTRICT COURT

9                    FOR THE DISTRICT OF ARIZONA

10

11  Malaika Washington, individually and on      **Case No. 2:21-cv-01318-MTL**
    behalf of all other similarly situated
12  individuals,

13                    Plaintiff,                   **MOTION TO DISMISS AND
                                                   COMPEL ARBITRATION OF OPT-
14  v.                                             IN CLAIMS[1]**

15  Freedom of Expression, LLC d/b/a Bones
    Cabaret; Wisnowski, Inc., d/b/a Skin Cabaret;
16  Skin Cabaret LLC; Todd Borowsky,
    Individually,
17
                    Defendants.
18

19        Defendants hereby request that the Court compel the Opt-In Plaintiffs (hereinafter,

20  "Claimants") to refer their dispute to arbitration and dismiss this action. *Altela, Inc. v.*

21  *Arizona Sci. & Tech. Enters. LLC*, CV-16-01762-PHX-DGC, 2016 WL 4539949 at *8 (D.

22  Ariz. Aug. 31, 2016) (relying upon *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th

23  Cir. 1988) (affirming dismissal of case where all claims were subject to arbitration).  The

24  Parties, admittedly, are subject to agreements to arbitrate any disputes between them,

25

26        [1] Defendants file this Motion to replace the prior version (Doc. 112), which has been
    withdrawn by the Court's text Order dated March 3, 2023.  (Doc.114).

1  including all the claims raised in the present action.

2  **PREAMBLE AND CERTIFICATION OF MEET AND CONFER**

3      In an attempt to avoid unnecessary motion practice, the Parties, via counsel, have

4  discussed the fact that all claimants that have opted into this action have signed the same

5  agreement that contains a series of provisions requiring arbitration of disputes, including

6  the ones at issue.  The Parties have conferred and confirmed that despite prior Plaintiff

7  Ingrid Alatorre having previously agreed to dismiss her claims asserted herein and pursue

8  those claims in arbitration, Claimants dispute the validity of the arbitration provisions at

9  issue.

10  **I.**    **INTRODUCTION**

11      Because the required forum for the resolution of disputes between individuals who

12  have attempted to join this action as opt-in claimants is arbitration, the Court has no live

13  and present legal issues to address and must dismiss the instant lawsuit at the very least

14  pursuant to Rule 12(b)(1). *Altela, Inc.* v. *Arizona Sci. & Tech. Enters. LLC,* CV-16-01762-

15  PHX-DGC, 2016 WL 4539949 at *8 (D. Ariz. Aug. 31, 2016) (relying upon *Sparling* v.

16  *Hoffman Const. Co.,* 864 F.2d 635, 638 (9th Cir. 1988) (affirming dismissal of case where

17  all claims were subject to arbitration)). Given the heavy presumption favoring resolution of

18  disputes via arbitration and the clear language of the arbitration language to which all

19  Claimants are signatories, the Court must dismiss all opt-in Claimants from this action.

20  **II.**    **LEGAL ARGUMENT AND CITATION OF AUTHORITIES**

21      The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq., exemplifies a strong

22  congressional intent that arbitration is a preferred method of resolving legal disputes in the

23  federal court system.  *Epiq Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) (relying in part on

24  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U. S. 20, 32 (1991)). Defendants contend that

25  there are no issues to be addressed and resolved in this Court, and that the Claimants' claims

26  raised in this lawsuit are subject to mandatory arbitration, and therefore, must be dismissed

so that Claimants can pursue their claims in private arbitration under the auspices of the American Arbitration Association ("AAA"), if so desired.

### A.    <u>The Arbitration Language.</u>

In the contracts that every Claimant has signed, arbitration is designated unequivocally as the mandatory method for resolution of any and all disputes. Specifically, Paragraph 10, which has remained unchanged for years, provides that any dispute or claim involving the relationship between independent performers and the Club Defendants must be arbitrated before AAA:

> 10.    Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.
>
> 11.    The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.
>
> 12.    If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

All performers that have signed on as opt-in Claimants in this action, as shown on Exhibit A hereto, have signed the form of Performer Lease Agreement used by the Club Defendants, containing the above-quoted language. Copies of these agreements can be found as part of Exhibit B hereto.   The arbitration language of the Performer Lease Agreement largely mirrors the standard AAA language and ensures that an arbitrator's award will be final and binding.  Section 12 contains a savings provision, which requires that any provision that could be deemed unenforceable is to be modified or stricken by agreement between the Parties or via the arbitration process.  In totality, these provisions are straightforward and harken back to tried and true language recommended by AAA on its website to foster a fair process for the resolution of disputes outside of the judicial system.

## B.    Enforceability of the Arbitration Provisions.

The U.S. Supreme Court has declared that the Federal Arbitration Act creates a strong presumption in favor of arbitration and that it "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Longnecker v. American Express Co.*, 23 F. Supp. 3d 1099, 1105 (D. Ariz. 2014) (*quoting Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (other citations and emphasis omitted)). The scope of the Court's review is limited to: (1) whether a valid agreement to arbitrate exists, and (2) whether the agreement encompasses the dispute at issue. *Id*. at 1106. *See Chiron Corp. v. Ortho Diagnostic Sys*., 207 F.3d 1126, 1130 (9th Cir. 2000).  Because of the strong presumption favoring arbitration, the party opposing arbitration bears the burden to prove that the claims at issue are not subject to the existing arbitration agreement.  *Id. See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 US 79, 91 (2000). Because Claimants' counsel has not indicated any substantive basis for his objection to the arbitration provisions at issue, Defendants can only explain why: (1) the provisions at issue constitute a valid agreement to arbitrate, and (2) these enforceable provisions

1    encompass the issues presented in this lawsuit, as an anticipatory rebuttal of Claimants'

2    positions as a matter of Arizona law. *Longnecker*, 23 F. Supp. 3d at 1106.

3                 **C.    The Arbitration Provisions Constitute a Valid Agreement.**

4              Arizona law recognizes that a valid and enforceable agreement exists when there is

5    "an offer, an acceptance, consideration, and sufficient specification of terms so that the

6    obligations involved can be ascertained." *Id.* (citing *Rogus v. Lords,* 804 P.2d 133, 135

7    (Ariz. Ct. App. 1991)). When the trial court is satisfied that the parties have assented to

8    contractual terms, the court "must give effect to that contract as written if the terms are clear

9    and unambiguous." *Id.* (citing *Mechanical Air Eng'g Co. v. Totem Const. Co.,* 801 P.2d 426,

10   427–28 (Ariz. Ct. App. 1989)).

11             The Club Defendants consistently required that any independent performer that

12   elected to appear at one of their venues must sign a Performer Lease Agreement that always

13   included Sections 10 through 12 (as quoted above) that mandate the resolution of <u>any</u>

14   dispute between the entertainer and the Club via arbitration. The fact that execution of this

15   Performer Lease Agreement was a requirement of the relationship between the performer

16   and Defendants does not affect the validity of the Agreement or its provisions requiring

17   resolution of disputes via arbitration. *See Longnecker*, 23 F. Supp.3d at 1108-09 (relying

18   upon *Equal Employment Opportunity Commission v. Cheesecake Factory, Inc*., Case No.

19   CV 08–1207–PHX–NVW, 2009 WL 1259359, at *3 (D. Ariz. May 6, 2009) for the

20   proposition that an arbitration agreement, which restaurant employees were required to sign

21   as part of onboarding, was valid irrespective of the fact it was mandatory).

22             In both of the above-cited cases, and in a number of others, plaintiffs opposing

23   arbitration have argued unsuccessfully that a mandatory arbitration provision renders the

24   agreement one of adhesion and is procedurally or substantively unconscionable. *Coup* v.

25   *Scottsdale Plaza Resort, LLC,* 823 F.Supp.2d 931, 947 (D. Ariz. 2011) (acknowledging that

26   unconscionability is often unsuccessfully asserted as a means to negate an arbitration

agreement as the bar to prove unconscionability is quite high).

Under Arizona law, which is the law applicable under the Performer Lease Agreement, the fact that a provision in an agreement is not subject to negotiation between the parties at the onset of their relationship does not make that agreement invalid as a matter of procedural unconscionability. *Broemmer* v. *Abortion Servs. of Phoenix, Ltd,* 173 Ariz. 148, 840 P.2d 1013, 1015-16 (1992). In fact, contracts of adhesion are generally valid and enforceable so long as the terms of the agreement were not hidden from the non-drafting party and reasonably could have been expected. *Id.* at 116; *see also R & L Ltd. Investments, Inc.* v. *Cabot Inv. Properties, LLC,* 729 F.Supp.2d 1110, 1115 (D. Ariz. 2010).

Similarly here, the Performance Lease Agreement is straightforward and provides a clear mechanism for dispute resolution using AAA and its Commercial Rules. The *Longnecker* opinion is instructive on this issue:

> The [c]ourt has three options in the event it determines that a clause of a contract is unconscionable as a matter of law. [It] may: (1) refuse to enforce the contract; (2) enforce the remainder of the contract without the unconscionable clause; or (3) limit the application of the unconscionable clause as to avoid any unconscionable result.

23 F. Supp. 3d at 1111 (internal citations omitted).

Under Arizona law, a court can only sever the terms of an arbitration agreement if the provisions at issue "clearly show the parties intended it to be severable." *Mousa* v. *Saba,* 218 P.3d 1038, 1044 (Ariz. Ct. App. 2009). Section 12 of the Performance Lease Agreement contains a provision to that effect, indicating the parties' intent that if any provision is deemed unenforceable, it is subject to reformation or removal. Thus, by way of example, if the Commercial Rules were deemed not as well suited to this dispute as the parties would like, they are free to stipulate to the modification of those Rules or to adopt a different or more specialized set of rules. *Longnecker,* 23 F. Supp. 3d at 1111-12; *See also Cooper* v. *QC Fin. Servs.,* 503 F. Supp. 2d 1266, 1292 (D. Ariz. 2007) (noting that the presumption in

1    favor of arbitration would allow reformation or selective application of arbitration

2    provisions to ensure enforceability).

3         **D.** **The Opt-In Claimants' Claims Are Subject To Arbitration.**

4         The valid arbitration provisions of the Performer Lease Agreement require that any

5    dispute between the Parties must be submitted to arbitration through AAA.  As a result, it

6    is beyond legitimate argument that any dispute between Claimants and the Defendants must

7    be resolved via AAA arbitration.

8    **III.**   **CONCLUSION**

9         For these reasons, Defendants respectfully request that the opt-in Claimants' claims

10   be dismissed, leaving Claimants free to pursue their claims in AAA arbitration should they

11   choose to do so.

12        RESPECTFULLY SUBMITTED this 3rd day of March, 2023.

13                                **BUCHALTER, A PROFESSIONAL**
                                 **CORPORATION**
14

15                               By: */s/ Laurent R.G. Badoux*
                                     Laurent R.G. Badoux
16                                   Glenn B. Hotchkiss
                                     15279 North Scottsdale Road, Suite 400
17                                   Scottsdale, AZ  85254-2659
                                     *Attorneys for Defendants*
18

19

20

21

22

23

24

25

26

1   I hereby certify that I electronically transmitted the
    attached document to the Clerk's Office using the
2   CM/ECF System for filing and transmittal of a Notice
    of Electronic Filing to the following CM/ECF
3   registrants, and mailed a copy of same to the following
    if non-registrants, this 3rd day of March 2023, to:
4

5   David W. Hodges, Esq.
    William M. Hogg, Esq.
6   HODGES & FOTY, LLP
    2 Greenway Plaza, Suite 250
7   Houston, TX  77046
    dhodges@hftrialfirm.com
8   *Attorney for Plaintiff*

9

10  By:   */s/ Irene Hogan*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26