*Exhibit B*

# Bone's Cabaret Entertainer Performance Lease

Date _01/10/22_

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: ___Abigail    Cole___ ("Licensee")
PRINT NAME

Stage Name(s): ___Kenzie___
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments, or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

**APPROVED AND AGREED TO BY:**

"Licensee":

Signature: _Abgail Cole_          Date: _01/10/22_

Printed Name: _Abigail Cole_

Stage Name: _Kenzie_

Bone's Cabaret (Company):

Signature: _SDay_          Date: _1/10/2022_

Printed Name: _Sarah D-Sair_
(Bone's Cabaret Manager)

Please attach:

Photo ID
City of Scottsdale AB Permit

THUMB PRINT OF LICENSEE



Date 03/19/2021

## Bone's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: **Abigail Cole** ("Licensee")

PRINT NAME

███████████████████████████████████

Stage Name(s): **Kenzie**

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub: and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1.  Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.
2.  It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the

premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in

good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

"Licensee":

Signature: _Abigail Cole_   Date: _03/19/2021_

Printed Name: _Abigail Cole_

Stage Name: _Kenzie_

Bone's Cabaret (Company):

Signature: _____   Date: _3-19-2021_

Printed Name: _Shawn G. Young_
(Bone's Cabaret Manager)

THUMB PRINT OF LICENSEE

# Skin Cabaret Entertainer Performance Lease

This Lease is entered into by and between Skin Cabaret ("Company") and:

Stage Name: _____ Zeah _____ ,

Full Given Name: _____ Avdra  Erideson _____ ("Contractor")

**Whereas**, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

**Whereas**, the "Contractor" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

**Whereas**, the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractor" may perform as a lessee,

**Now, Therefore**, the Parties are bound by the following:

1. Company and contractor intend to create a lessor – lessee relationship. Company and Contractor shall not be constructed as joint ventures, employer/employee, contractor/ independent contractor, partners, or agents of each other and neither shall have the power to bind or obligate the other, except to the extent set forth in this Lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Contractor expressly acknowledge that the status created between the Company and Contractor is that of a lease for use of the premises. (a) Contractor shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Contractor at the premises. (b) Contractor acknowledges that Company will not be responsible for Worker's Compensation on behalf of Contractor, will not carry any coverage for Contractor, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Contractor. (c) Contractor acknowledges and agrees that in the event that any governing federal or state agency determines that the relationship between Company and Contractor is other than that expressly stated in this paragraph, Contractor will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Contractor. (d) If Contractor initiates or supports any assertion that the relationship is anything other than as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Contractor access to its premises during normal operating hours for Contractor's performances. The scheduling of performances shall be determined by Contractor in consultation with Company. Contractor shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Contractor.

5. Contractor shall be paid exclusively by patrons of Company.

6. Contractor agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Contractor agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees , fines, and costs arising out of Contractor's performances or services rendered at Company's premises or business location which result from Contractor's non-compliance.

8. Contractor shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.

9. Either Company or Contractor may terminate this Lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this Lease without notice in the event of any material breach by Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.

This Lease is entered into by and between Skin Cabaret ("Company") and:

Stage Name: _____ Yeah _____

Full Given Name: _____ Audra Erickson _____ ("Contractor")

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Contractor" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractor" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and contractor intend to create a lessor – lessee relationship. Company and Contractor shall not be constructed as joint ventures, employer/employee, contractor/ independent contractor, partners, or agents of each other and neither shall have the power to bind or obligate the other, except to the extent set forth in this Lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Contractor expressly acknowledge that the status created between the Company and Contractor is that of a lease for use of the premises. (a) Contractor shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Contractor at the premises. (b) Contractor acknowledges that Company will not be responsible for Worker's Compensation law or of Contractor, will not carry any coverage for Contractor, and that any coverage (under Worker's Compensation on behalf otherwise) for injury or illness occurring during the performances of this Lease is the exclusive responsibility of Contractor. (c) Contractor acknowledges and agrees that in the event that any governing federal or state agency determines that the relationship between Company and Contractor is other than that expressly stated in this paragraph, Contractor will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Contractor. (d) If Contractor initiates or supports any assertion that the relationship is anything other than as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and expenses incured by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Contractor access to its premises during normal operating hours for Contractor's performances. The scheduling of performances shall be determined by Contractor in consultation with Company. Contractor shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Contractor.

5. Contractor shall be paid exclusively by patrons of Company.

6. Contractor agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Contractor agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees , fines, and costs arising out of Contractor's performances or services rendered at Company's premises or business location which result from Contractor's non-compliance.

8. Contractor shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.

9. Either Company or Contractor may terminate this Lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this Lease without notice in the event of any material breach by Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Contractor shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Contractor.

This Lease is the entire agreement between Company and Contractor and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin Cabaret (Company):

Signature: _____          Date: _____

Printed Name: _____
        (Skin Cabaret Manager)

"Contractor":

Signature: _____          Date: 3/12/16

Printed Name: Audra Erickson

Stage Name: Zeah

CONTRACTOR'S
THUMBPRINT

## Skin Cabaret Entertainer Performance Lease

This Lease is entered into by and between Skin Cabaret ("Company") and:

Stage Name: ___Seret___

Full Given Name: ___Corissa Jones___ ("Contractor")

**Whereas**, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

**Whereas**, the "Contractor" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

**Whereas**, the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractor" may perform as a lessee,

**Now, Therefore**, the Parties are bound by the following:

1.  Company and contractor intend to create a lessor – lessee relationship. Company and Contractor shall not be constructed as joint ventures, employer/employee, contractor/ independent contractor, partners, or agents of each other and neither shall have the power to bind or obligate the other, except to the extent set forth in this Lease.

2.  It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Contractor expressly acknowledge that the status created between the Company and Contractor is that of a lease for use of the premises. (a) Contractor shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Contractor at the premises. (b) Contractor acknowledges that Company will not be responsible for Worker's Compensation on behalf of Contractor, will not carry any coverage for Contractor, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Contractor. (c) Contractor acknowledges and agrees that in the event that any governing federal or state agency determines that the relationship between Company and Contractor is other than that expressly stated in this paragraph, Contractor will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Contractor. (d) If Contractor initiates or supports any assertion that the relationship is anything other than as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3.  Company will give Contractor access to its premises during normal operating hours for Contractor's performances. The scheduling of performances shall be determined by Contractor in consultation with Company. Contractor shall pay Company lease payments in predetermined rates set by Company.

4.  All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Contractor.

5.  Contractor shall be paid exclusively by patrons of Company.

6.  Contractor agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7.  Contractor agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees , fines, and costs arising out of Contractor's performances or services rendered at Company's premises or business location which result from Contractor's non-compliance.

8.  Contractor shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.

9.  Either Company or Contractor may terminate this Lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this Lease without notice in the event of any material breach by Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Contractor shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Contractor.

This Lease is the entire agreement between Company and Contractor and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin Cabaret (Company):

Signature: _____    Date: 4/4/2016

Printed Name: _____
(Skin Cabaret Manager)

"Contractor":

Signature: _____    Date: 4/4/2016

Printed Name: _____

Stage Name: _____

CONTRACTOR'S
THUMBPRINT

## Skin Cabaret Entertainer Performance Lease

This Lease is entered into by and between Skin Cabaret ("company") and:

Stage Name: _NORTH WEST_

Full Given Name: _Ellesse Greer_ ("Contractor")

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Contractor" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractor" may perform as a lease,

Now, Therefore, the parties are bound by the following:

1. Company and contractor intend to create a lessor—lessee relationship. Company and Contractor shall not be constructed as joint ventures, employer/employee, contractor/independent contractor, partners, or agents of each other and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.
2. It is the intent and purposes of this agreement to create a legal relationship of lessor—lessee. Company and Contractor expressly acknowledge that the status created between the Company and Contractor is that of a lease for use of the premises. (a) Contractor shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Contractor at the premises. (b) Contractor acknowledges that Company will not be responsible for Worker's Compensation on behalf of Contractor, will not carry any coverage for Contractor, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this lease is the exclusive responsibility of Contractor. (c) Contractor acknowledges and agrees that in the event that any governing federal or state agency determines that the relationship between Company and Contractor is other than that expressly stated in this paragraph, Contractor will reimburse and hold the company harmless from any and all monies determined to be due and owing by Contractor. (d) if Contractor initiates or supports any assertion that the relationship is anything other than as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and experiences incurred by Company, including actual and reasonable attorney's fees in defending such action.
3. Company will give Contractor access to its premises during normal operating hours for Contractor's performances. The scheduling of performances shall be determined by Contractor in consultation with Company. Contractor shall pay Company lease payments in predetermined rates set by company.
4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Contractor.
5. Contractor shall be paid exclusively by patrons of Company.
6. Contractor agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.
7. Contractor agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Contractor's performances or services rendered at Company's premises or business location which result from Contractor's non-compliance.
8. Contractor shall hold Company harmless from any claims, lawsuits, judgements or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.

9. Either Company or Contractor may terminate this lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this lease without notice in the event of any material breach by Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this lease which is incapable of resolution will be resolved by arbitration before one (1) in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this agreement and shall in no way affect any other provision of this lease or the validity or enforceability of this lease. In the event any such provision (The Applicable Provision) is so adjudged void or unenforceable, Company and Contractor shall takes the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligation pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this lease shall not operate or be construed as a waiver of any subsequent breach by the Contractor.

This lease is the entire agreement between Company and Contractor and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin Cabaret (Company):

Signature: _____   Date: _____

Printed Name: _____


Contractor:

Signature: _____*Ellesse Gee*_____   Date: _____

Printed Name: _____*Ellesse*_____

Stage Name: _____*NORTH WEST*_____


Contractor's Thumbprint

## Skin Cabaret Entertainer Performance Lease

This Lease is entered into by and between Skin Cabaret ("Company") and:

Stage Name: _____Lily_____

Full Given Name: _____Lauren   Amad_____ ("Contractor")

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Contractor" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractor" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and contractor intend to create a lessor – lessee relationship. Company and Contractor shall not be constructed as joint ventures, employer/employee, contractor/ independent contractor, partners, or agents of each other and neither shall have the power to bind or obligate the other, except to the extent set forth in this Lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Contractor expressly acknowledge that the status created between the Company and Contractor is that of a lease for use of the premises. (a) Contractor shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Contractor at the premises. (b) Contractor acknowledges that Company will not be responsible for Worker's Compensation on behalf of Contractor, will not carry any coverage for Contractor, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Contractor. (c) Contractor acknowledges and agrees that in the event that any governing federal or state agency determines that the relationship between Company and Contractor is other than that expressly stated in this paragraph, Contractor will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Contractor. (d) If Contractor initiates or supports any assertion that the relationship is anything other than as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Contractor access to its premises during normal operating hours for Contractor's performances. The scheduling of performances shall be determined by Contractor in consultation with Company. Contractor shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Contractor.

5. Contractor shall be paid exclusively by patrons of Company.

6. Contractor agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Contractor agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees , fines, and costs arising out of Contractor's performances or services rendered at Company's premises or business location which result from Contractor's non-compliance.

8. Contractor shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.

9. Either Company or Contractor may terminate this Lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this Lease without notice in the event of any material breach by Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.

_____ _____ of ("Company") and:

**Stage Name:** _Lily_ _____

**Full Given Name:** _Lauren_ _Borad_ _____ ("Contractor")

**Whereas,** the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

**Whereas,** the "Contractor" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

**Whereas,** the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractor" may perform as a lessee.

**Now, Therefore,** the Parties are bound by the following:

1. Company and contractor intend to create a lessor – lessee relationship. Company and Contractor shall not be construed as joint ventures, employer/employee, contractor/ independent contractor, partners, or agents of each other and neither shall have the power to bind or obligate the other, except to the extent set forth in this Lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Contractor expressly acknowledge that the status created between the Company and Contractor is that of a lease for use of the premises. (a) Contractor shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with Contractor at the premises. (b) Contractor acknowledges that Company will not be responsible for Worker's Compensation on behalf of Contractor, will not carry any coverage for Contractor, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Contractor. (c) Contractor acknowledges and agrees that in the event that any governing federal or state agency determines that the relationship between Company and Contractor is other then that expressly stated in this paragraph, Contractor will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Contractor. (d) If Contractor initiates or supports any assertion that the relationship is anything other than as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Contractor access to its premises during normal operating hours for Contractor's performances. The scheduling of performances shall be determined by Contractor in consultation with Company. Contractor shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Contractor.

5. Contractor shall be paid exclusively by patrons of Company.

6. Contractor agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Contractor agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees , fines, and costs arising out of Contractor's performances or services rendered at Company's premises or business location which result from Contractor's non-compliance.

8. Contractor shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.

9. Either Company or Contractor may terminate this Lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this Lease without notice in the event of any material breach by Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Contractor shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Contractor.

This Lease is the entire agreement between Company and Contractor and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin Cabaret (Company)

Signature: _____     Date: _2-25-16_

Printed Name: _____ VOSY

Skin Cabaret manager

"Contractor":

Signature: _Lauren Amad_     Date: _2-25-16_

Printed Name: _Lauren Amad_

Stage Name: _Lily_

CONTRACTOR'S
THUMBPRINT

## Skin Cabaret Entertainer Performance Lease

This Lease is entered into by and between Skin Cabaret ("company") and:

Stage Name: _Nubia_

Full Given Name: _Mia Bland_ ("Contractor")

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Contractor" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractor" may perform as a lease,

Now, Therefore, the parties are bound by the following:

1. Company and contractor intend to create a lessor—lessee relationship. Company and Contractor shall not be constructed as joint ventures, employer/employee, contractor/independent contractor, partners, or agents of each other and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.
2. It is the intent and purposes of this agreement to create a legal relationship of lessor—lessee. Company and Contractor expressly acknowledge that the status created between the Company and Contractor is that of a lease for use of the premises. (a) Contractor shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Contractor at the premises. (b) Contractor acknowledges that Company will not be responsible for Worker's Compensation on behalf of Contractor, will not carry any coverage for Contractor, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this lease is the exclusive responsibility of Contractor. (c) Contractor acknowledges and agrees that in the event that any governing federal or state agency determines that the relationship between Company and Contractor is other than that expressly stated in this paragraph, Contractor will reimburse and hold the company harmless from any and all monies determined to be due and owing by Contractor. (d) if Contractor initiates or supports any assertion that the relationship is anything other than as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and experiences incurred by Company, including actual and reasonable attorney's fees in defending such action.
3. Company will give Contractor access to its premises during normal operating hours for Contractor's performances. The scheduling of performances shall be determined by Contractor in consultation with Company. Contractor shall pay Company lease payments in predetermined rates set by company.
4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Contractor.
5. Contractor shall be paid exclusively by patrons of Company.
6. Contractor agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.
7. Contractor agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Contractor's performances or services rendered at Company's premises or business location which result from Contractor's non-compliance.
8. Contractor shall hold Company harmless from any claims, lawsuits, judgements or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.

9. Either Company or Contractor may terminate this lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this lease without notice in the event of any material breach by Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this lease which is incapable of resolution will be resolved by arbitration before one (1) in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this agreement and shall in no way affect any other provision of this lease or the validity or enforceability of this lease. In the event any such provision (The Applicable Provision) is so adjudged void or unenforceable, Company and Contractor shall takes the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligation pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this lease shall not operate or be construed as a waiver of any subsequent breach by the Contractor.

This lease is the entire agreement between Company and Contractor and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin Cabaret (Company):

Signature: _Mia Bland_____    Date: _06/25/16_____

Printed Name: _Mia Bland_____

Contractor:

Signature: _____    Date: _____

Printed Name: _____

Stage Name: _____

Contractor's Thumbprint

# Bone's Cabaret Entertainer Performance Lease

Date 03|01|22

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: Monique Sina _____ ("Licensee")

PRINT NAME

Stage Name(s): _____ Nina _____

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments, or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

# Bone's Cabaret Entertainer Performance Lease

Date _1-13-22_

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: _Shozanna    C.    Levon_____ ("Licensee")
PRINT NAME

█████████████████████████████████████████████

Stage Name(s): _Lillith_____
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments, or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

**APPROVED AND AGREED TO BY:**

**"Licensee":**

Signature: _____   Date: _____ 1-13-22

Printed Name: Shozanna LeVon

Stage Name: Lillith

**Bone's Cabaret (Company):**

Signature: _____   Date: 1-12-22

Printed Name: c Hub Huec
(Bone's Cabaret Manager)

Please attach:

Photo ID
City of Scottsdale AB Permit

THUMB PRINT OF LICENSEE

Date **5-25-21**

## Bone's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: *Shozanna Levon* ("Licensee")

PRINT NAME

Stage Name(s): Naomi   lillith

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1.  Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.
2.  It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the

premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3.  Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4.  All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5.  Licensee shall be paid exclusively by patrons of the Company.

6.  Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7.  Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8.  Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9.  The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in

good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

"Licensee":

Signature: _____   Date: 5-25-21

Printed Name: Shozanna Levon

Stage Name: Naomi

Bone's Cabaret (Company):

Signature: _____   Date: 5/25/2021

Printed Name: Sara D Saiz
(Bone's Cabaret Manager)

THUMB PRINT OF LICENSEE



Date July 6th 2021

## Bone's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: _Shozenna  Levon_ ("Licensee")
PRINT NAME

Stage Name(s): _Lillith_
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the

premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in

good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

"Licensee":

Signature: _____   Date: _July 6th 2021_

Printed Name: _Shozanna Levoh_

Stage Name: _Lillith_

Bone's Cabaret (Company):

Signature: _____   Date: _7-6-21_

Printed Name: _Chuck Huus_

(Bone's Cabaret Manager)

THUMB PRINT OF LICENSEE

Date **4·8·21**

## Skin's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Skin's Cabaret ("Company") and:

Full Given Name: _Simone Patton_ ("Licensee")
PRINT NAME

███████████████████████████████████████████████████

Stage Name(s): _Harper_
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the

premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in

good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.


APPROVED AND AGREED TO BY:


"Licensee":

Signature: _____   Date: 4-8-2021

Printed Name: Simone Patton

Stage Name: Harper


Signature: Michael Alkire   Date: 4-8-21

Printed Name: MICHAEL ALKIRE
                    (Skin's Cabaret Manager)



THUMB PRINT OF LICENSEE

FOE001010

Date 10·17·24 g

# Skin's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Skin's Cabaret ("Company") and:

Full Given Name: _Simone Shantell Patton_ ("Licensee")
PRINT NAME

Stage Name(s): _Hunter_
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation

FOE001012

law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and

(iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin's Cabaret (Company):

Signature: _____   Date: _10/17/19_

Printed Name: _MIKE ALKIRE_

         (Skin's Cabaret Manager)

"Licensee":

Signature: _____   Date: _10.17.2019_

Printed Name: _Simone Pan__

Stage Name: _Harper_



Thumb Print of Licensee

FOE001014

# Bone's Cabaret Entertainer Performance Lease

Date __5/6/2022__

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: __Valerie Jazmine Cervantes__ ("Licensee")

<span style="text-align:center">PRINT NAME</span>



Stage Name(s): __Robin__

<span style="text-align:center">PRINT NAME</span>

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments, or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

**APPROVED AND AGREED TO BY:**

"Licensee":

Signature: _Valerie Cervantes_ Date: _5/6/2022_

Printed Name: _Valerie Cervantes_

Stage Name: _Robin_

**Bone's Cabaret (Company):**

Signature: _____ Date: _5-6-22_

Printed Name: _Chuck Huus_
(Bone's Cabaret Manager)

Please attach:

Photo ID
City of Scottsdale AB Permit

THUMB PRINT OF LICENSEE



Date 01/09/126

## Bone's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: Shanelle Mendez ("Licensee")
PRINT NAME

Stage Name(s): Nelly
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the

premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3.  Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4.  All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5.  Licensee shall be paid exclusively by patrons of the Company.

6.  Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7.  Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8.  Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9.  The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in

good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

"Licensee":

Signature: _Shanelle M._   Date: _01/09/20_

Printed Name: _Shanelle Mendez_

Stage Name: _Nelly_

Bone's Cabaret (Company):

Signature: _____   Date: _1-9.27_

Printed Name: _CHUCK Jvv5_
(Bone's Cabaret Manager)



THUMB PRINT OF LICENSEE



Date __11/6/19__

# Skin's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Skin's Cabaret ("Company") and:

Full Given Name: __Terilyn    Marie    Christy__    ("Licensee")

PRINT NAME

Stage Name(s): __SACHI__

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation

law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and

(iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin's Cabaret (Company):

Signature: _Michael Jacobson_ Date: _11/6/19_

Printed Name: _~~Terilyn~~ TC_

(Skin's Cabaret Manager)

"Licensee":

Signature: _____ Date: _11/6/19_

Printed Name: _Terilyn Christy_

Stage Name: _Sachi_



Thumb Print of Licensee



Date 7-7-19

## Skin's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Skin's Cabaret ("Company") and:

Full Given Name: _____ Denise Brown _____ ("Licensee")
PRINT NAME

Stage Name(s): _____ Demi _____
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation

law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3.  Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4.  All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5.  Licensee shall be paid exclusively by patrons of the Company.

6.  Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7.  Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8.  Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9.  The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and

(iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin's Cabaret (Company):

Signature: _____ *Heidi Hawkins* Date: 7-7-19

Printed Name: _____ HEDI HAWKING
(Skin's Cabaret Manager)

"Licensee":

Signature: _____ Date: 7-7-19

Printed Name: Denise B

Stage Name: Demi



Thumb Print of Licensee



Date Aug 26 2019

## Skin's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Skin's Cabaret ("Company") and:

Full Given Name: _Denise Brunn_ ("Licensee")
PRINT NAME

Stage Name(s): _Demi_
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship.  Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises.  (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises.  (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation

law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event **any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all** monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and

(iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin's Cabaret (Company):

Signature: _~Bengonzp~_____   Date: _8/26/2019_

Printed Name: _Benge Gonzalez Jr_
(Skin's Cabaret Manager)

"Licensee":

Signature: _~O~_____   Date: _Aug 26, 2019_

Printed Name: _Denise B_

Stage Name: _Demi_



Thumb Print of Licensee



# Skin's Cabaret Entertainer Performance Lease

Date 12/10/21

This Entertainer Performance Lease is entered by and between Skin's Cabaret ("Company") and:

Full Given Name: Denise Renee Brun ("Licensee")

PRINT NAME

Stage Name(s): Demi

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship.  Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises.  (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises.  (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee.  (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee.  (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances.  The scheduling of performances shall be determined by Licensee in consultation with Company.  Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA").  The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award.  In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.


APPROVED AND AGREED TO BY:


**"Licensee":**

Signature: _____   Date: 12/10/2021

Printed Name: Denise Brown

Stage Name: Demi


Signature: _____   Date: 12/10/2021

Printed Name: Christopher Sanford
           **(Skin's Cabaret Manager)**


Please attach:

Photo ID

City of Scottsdale AB Permit


THUMB PRINT OF LICENSEE



Date 12/14/2020

## Skin's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Skin's Cabaret ("Company") and:

Full Given Name: _Denise Borrin_ ("Licensee")
PRINT NAME

Stage Name(s): _Demi_
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the

premises.  (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee.  (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee.  (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3.  Company will give Licensee access to its premises during normal operating hours for Licensee's performances.  The scheduling of performances shall be determined by Licensee in consultation with Company.  Licensee shall pay Company lease payments in predetermined rates set by Company.

4.  All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5.  Licensee shall be paid exclusively by patrons of the Company.

6.  Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7.  Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8.  Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9.  The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10.  Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA").  The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award.  In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11.  The decision or award of the arbitrator shall be final and binding upon the parties.  Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12.  If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease.  In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in

good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

**"Licensee":**

Signature: _____ Date: 12-14-2020

Printed Name: Denise

Stage Name: Demi

Signature: _____ Date: 12/14/2020

Printed Name: Avidor Brandenburg
(Skin's Cabaret Manager)

THUMB PRINT OF LICENSEE



Date 10/13/21

## Skin's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Skin's Cabaret ("Company") and:

Full Given Name: _MYRAN JULIANNE DAVIS_ ("Licensee")
PRINT NAME

Stage Name(s): _SALEM_
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the



premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in



good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

"Licensee":

Signature: _____   Date: 10/13/21

Printed Name: MYRAN J DAVIS

Stage Name: SALEM

Signature: _____   Date: 10/13/21

Printed Name: Angel Shilka
(Skin's Cabaret Manager)

THUMB PRINT OF LICENSEE



# Skin's Cabaret Entertainer Performance Lease

Date 2/10/21

This Entertainer Performance Lease is entered by and between Skin's Cabaret ("Company") and:

Full Given Name: MYRAAN J DAVIS ("Licensee")

PRINT NAME

Stage Name(s): SALEM

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship.  Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises.  (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises.  (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee.  (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee.  (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances.  The scheduling of performances shall be determined by Licensee in consultation with Company.  Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA").  The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award.  In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties.  Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease.  In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

**"Licensee":**

Signature: _____ Date: _12/10/21_

Printed Name: _Myran J Davis_

Stage Name: _Salem_

Signature: _____ Date: _12/10/21_

Printed Name: _Angel Sticka_
                (Skin's Cabaret Manager)

Please attach:

Photo ID

City of Scottsdale AB Permit

THUMB PRINT OF LICENSEE



# Skin's Cabaret Entertainer Performance Lease

Date _08/24/22_

This Entertainer Performance Lease is entered by and between Skin's Cabaret ("Company") and:

Full Given Name: _India DEJANE Warren_ ("Licensee")
PRINT NAME

Stage Name(s): _Yada_
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.


APPROVED AND AGREED TO BY:


**"Licensee":**

Signature: _____ Date: _08/24/22_

Printed Name: _Indra Whines_

Stage Name: _Yada_


Signature: _Michael D Alkire_ Date: _8/24/22_

Printed Name: _MICHAEL ALKIRE JR_
**(Skin's Cabaret Manager)**


Please attach:

Photo ID

City of Scottsdale AB Permit


THUMB PRINT OF LICENSEE



# Skin's Cabaret

# Entertainer Performance Lease

Date _11/28/2022_

This Entertainer Performance Lease is entered by and between Skin's Cabaret ("Company") and:

Full Given Name: ___India DEJANA Warren___ ("Licensee")
PRINT NAME

Stage Name(s): ___Yada___
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2023

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises.  (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises.  (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee.  (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee.  (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances.  The scheduling of performances shall be determined by Licensee in consultation with Company.  Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA").  The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award.  In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties.  Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

"Licensee":

Signature: _____   Date: 11/29/2022

Printed Name: India Warren

Stage Name: Yada

Signature: _____   Date: 11/29/2022

Printed Name: Alidor

(Skin's Cabaret Manager)

THUMB PRINT OF LICENSEE

2023

*Revoke* Date 11-15-21

# Bone's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: _Michelle Marie Donart_ ("Licensee")

PRINT NAME

Stage Name(s): _Mina_

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the

premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in

good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

"Licensee":

Signature: _____  Date: 11/15/21

Printed Name: _Michelle Donarski_

Stage Name: _Mina_

Bone's Cabaret (Company):

Signature: _____  Date: 11/15/21

Printed Name: _Sarah D Saiz_

(Bone's Cabaret Manager)

THUMB PRINT OF LICENSEE

## Skin Cabaret Entertainer Performance Lease

This Lease is entered into by and between Skin Cabaret ("company") and:

Stage Name: _Eve_

Full Given Name: _Ella Panchenko_  ("Contractor")

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Contractor" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractor" may perform as a lease,

Now, Therefore, the parties are bound by the following:

1. Company and contractor intend to create a lessor—lessee relationship. Company and Contractor shall not be constructed as joint ventures, employer/employee, contractor/independent contractor, partners, or agents of each other and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purposes of this agreement to create a legal relationship of lessor—lessee. Company and Contractor expressly acknowledge that the status created between the Company and Contractor is that of a lease for use of the premises. (a) Contractor shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Contractor at the premises. (b) Contractor acknowledges that Company will not be responsible for Worker's Compensation on behalf of Contractor, will not carry any coverage for Contractor, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this lease is the exclusive responsibility of Contractor. (c) Contractor acknowledges and agrees that in the event that any governing federal or state agency determines that the relationship between Company and Contractor is other than that expressly stated in this paragraph, Contractor will reimburse and hold the company harmless from any and all monies determined to be due and owing by Contractor. (d) if Contractor initiates or supports any assertion that the relationship is anything other than as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and experiences incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Contractor access to its premises during normal operating hours for Contractor's performances. The scheduling of performances shall be determined by Contractor in consultation with Company. Contractor shall pay Company lease payments in predetermined rates set by company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Contractor.

5. Contractor shall be paid exclusively by patrons of Company.

6. Contractor agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Contractor agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Contractor's performances or services rendered at Company's premises or business location which result from Contractor's non-compliance.

8. Contractor shall hold Company harmless from any claims, lawsuits, judgements or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.

9. Either Company or Contractor may terminate this lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this lease without notice in the event of any material breach by Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this lease which is incapable of resolution will be resolved by arbitration before one (1) in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this agreement and shall in no way affect any other provision of this lease or the validity or enforceability of this lease. In the event any such provision (The Applicable Provision) is so adjudged void or unenforceable, Company and Contractor shall takes the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligation pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this lease shall not operate or be construed as a waiver of any subsequent breach by the Contractor.

This lease is the entire agreement between Company and Contractor and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin Cabaret (Company):

Signature: _____     Date: _____

Printed Name: _____


Contractor:

Signature: _____     Date: Aug. 18, 2016

Printed Name: Ella Panchenko

Stage Name: Eve


Contractor's Thumbprint

Date _____

## Bone's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: _____ ("Licensee")

PRINT NAME

Stage Name(s): _____ *Caramel* _____

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.
2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the

premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in

good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

"Licensee":

Signature: _Joich Yru_____ Date: _8·26·21___

Printed Name: _Linda Tyner____

Stage Name: _Caramel_____

Bone's Cabaret (Company):

Signature: _____ Date: _8-26-21___

Printed Name: _CHuck Huos___
(Bone's Cabaret Manager)

THUMB PRINT OF LICENSEE



Date 9·12·21

## Bone's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: _____ Linda   Tanner _____ ("Licensee")
PRINT NAME

Stage Name(s): _____ Caramel _____
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the

premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3.  Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4.  All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5.  Licensee shall be paid exclusively by patrons of the Company.

6.  Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7.  Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8.  Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9.  The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in

good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

"Licensee":

Signature: _Auede Cee_____ Date: _9·12·21_

Printed Name: _linda Tanner_

Stage Name: _Caramel_

Bone's Cabaret (Company):

Signature: _____ Date: _9-12-21_

Printed Name: _C. Avde Huus_
              (Bone's Cabaret Manager)

THUMB PRINT OF LICENSEE

## Skin Cabaret Entertainer Performance Lease

This Lease is entered into by and between Skin Cabaret ("Company") and:

Stage Name: _Mary_ /

Full Given Name: _LOURDES LEAL_ ("Contractor")

**Whereas**, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

**Whereas**, the "Contractor" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

**Whereas**, the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractor" may perform as a lessee,

**Now, Therefore**, the Parties are bound by the following:

1. Company and contractor intend to create a lessor – lessee relationship. Company and Contractor shall not be constructed as joint ventures, employer/employee, contractor/ independent contractor, partners, or agents of each other and neither shall have the power to bind or obligate the other, except to the extent set forth in this Lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Contractor expressly acknowledge that the status created between the Company and Contractor is that of a lease for use of the premises. (a) Contractor shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Contractor at the premises. (b) Contractor acknowledges that Company will not be responsible for Worker's Compensation on behalf of Contractor, will not carry any coverage for Contractor, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Contractor. (c) Contractor acknowledges and agrees that in the event that any governing federal or state agency determines that the relationship between Company and Contractor is other than that expressly stated in this paragraph, Contractor will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Contractor. (d) If Contractor initiates or supports any assertion that the relationship is anything other than as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Contractor access to its premises during normal operating hours for Contractor's performances. The scheduling of performances shall be determined by Contractor in consultation with Company. Contractor shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Contractor.

5. Contractor shall be paid exclusively by patrons of Company.

6. Contractor agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Contractor agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees , fines, and costs arising out of Contractor's performances or services rendered at Company's premises or business location which result from Contractor's non-compliance.

8. Contractor shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.

9. Either Company or Contractor may terminate this Lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this Lease without notice in the event of any material breach by Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.

This Lease is entered into by and between Skin Cabaret ("Company") and:

Stage Name: _Macy_

Full Given Name: _Lourdes Lara_ ("Contractor")

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Contractor" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractor" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and contractor intend to create a lessor – lessee relationship. Company and Contractor shall not be constructed as joint ventures, employer/employee, contractor/ independent contractor, partners, or agents of each other and neither shall have the power to bind or obligate the other, except to the extent set forth in this Lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Contractor expressly acknowledge that the status created between the Company and Contractor is that of a lease for use of the premises. (a) Contractor shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Contractor at the premises. (b) Contractor acknowledges that Company will not be responsible for Worker's Compensation on behalf of Contractor, will not carry any coverage for Contractor, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performances of this Lease is the exclusive responsibility of Contractor. (c) Contractor acknowledges and agrees that in the event that any governing federal or state agency determines that the relationship between Company and Contractor is other than that expressly stated in this paragraph, Contractor will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Contractor. (d) If Contractor initiates or supports any assertion that the relationship is anything other then as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Contractor access to its premises during normal operating hours for Contractor's performances. The scheduling of performances shall be determined by Contractor in consultation with Company. Contractor shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Contractor.

5. Contractor shall be paid exclusively by patrons of Company.

6. Contractor agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Contractor agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees , fines, and costs arising out of Contractor's performances or services rendered at Company's premises or business location which result from Contractor's non-compliance.

8. Contractor shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.

9. Either Company or Contractor may terminate this Lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this Lease without notice in the event of any material breach by Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Contractor shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Contractor.

This Lease is the entire agreement between Company and Contractor and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin Cabaret (Company):

Signature: _Kat Pol_          Date: _3/11/16_

Printed Name: _Katy Robison_
                (Skin Cabaret Manager)

"Contractor":

Signature: _J RE_          Date: _3/11/16_

Printed Name: _LOURDES Laps_

Stage Name: _Macy_

CONTRACTOR'S
THUMBPRINT



# Bone's Cabaret Entertainer Performance Lease

Date __1/16/21__

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: ___Anastasi da Kostenko___ (Licensee)

Stage Name(s): ___IVANKA___

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments, or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

**APPROVED AND AGREED TO BY:**

**"Licensee":**

Signature: _____ Date: _6/46/20_

Printed Name: _Anastasiya Kostenko_

Stage Name: _Wanka_

**Bone's Cabaret (Company):**

Signature: _____ Date: _1-|x-22_

Printed Name: _CHUCK HUUS_

(Bone's Cabaret Manager)

Please attach:

Photo ID
City of Scottsdale AB Permit

THUMB PRINT OF LICENSEE

# Bone's Cabaret Entertainer Performance Lease

Date _1/28/22_

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: ___Anastasiya   Kostenko___ ("Licensee")

PRINT NAME

Stage Name(s): ___IVANKA___

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments, or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

**APPROVED AND AGREED TO BY:**

**"Licensee":**

Signature: _____ Auyll _____ Date: 1/28/22

Printed Name: _Anastasiya Lostenko_

Stage Name: _IVANKA_

**Bone's Cabaret (Company):**

Signature: _____ Date: 1-29-22

Printed Name: _CHUCK HUUS_
                (Bone's Cabaret Manager)

Please attach:

Photo ID
City of Scottsdale AB Permit

THUMB PRINT OF LICENSEE



Date _____

## Skin's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Skin's Cabaret ("Company") and:

Full Given Name: _Hailey Autumn Burket_____ ("Licensee")

PRINT NAME

Stage Name(s): _Bella_____

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation

law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and

(iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin's Cabaret (Company):

Signature: _____ Date: 6/18/2020

Printed Name: Christopher Sanford
              (Skin's Cabaret Manager)

"Licensee":

Signature: _____ Date: 6/18/20

Printed Name: Hailey Burket

Stage Name: Bella

Thumb Print of Licensee



Date 11/06/2021

## Skin's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Skin's Cabaret ("Company") and:

Full Given Name: ___Hailey M Autumn Burret___ ("Licensee")

PRINT NAME

███████████████████████████████████████

Stage Name(s): ___Josephine___

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the

premises.  (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee.  (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee.  (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3.  Company will give Licensee access to its premises during normal operating hours for Licensee's performances.  The scheduling of performances shall be determined by Licensee in consultation with Company.  Licensee shall pay Company lease payments in predetermined rates set by Company.

4.  All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5.  Licensee shall be paid exclusively by patrons of the Company.

6.  Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7.  Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8.  Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9.  The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10.  Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA").  The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award.  In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11.  The decision or award of the arbitrator shall be final and binding upon the parties.  Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12.  If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease.  In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in

good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

"Licensee":

Signature: _____   Date: 11/06/2021

Printed Name: Hayley Burke

Stage Name: Sapphire

Signature: _____   Date: 11/06/2021

Printed Name: Hayley Burke
(Skin's Cabaret Manager)

THUMB PRINT OF LICENSEE

# Bone's Cabaret Entertainer Performance Lease

Date 05/23/2022

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: **Knadyah A. Sidrique** ("Licensee")
PRINT NAME

Stage Name(s): **Kitten**
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments, or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

**APPROVED AND AGREED TO BY:**

**"Licensee":**

Signature: _____ Date: _03/23/2022_

Printed Name: _Khadyah Sidique_

Stage Name: _Kitten_

**Bone's Cabaret (Company):**

Signature: _Denise Ward_ Date: _5/23/22_

Printed Name: _Denise Ward_
　　　　　　(Bone's Cabaret Manager)

Please attach:

Photo ID
City of Scottsdale AB Permit

THUMB PRINT OF LICENSEE

# Bone's Cabaret Entertainer Performance Lease

Date 05/23/2022

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: _Khadyah A. Sidrique_ ("Licensee")
PRINT NAME

Stage Name(s): _Kitten_
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments, or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

**APPROVED AND AGREED TO BY:**

"Licensee":

Signature: _____ Date: 03/23/2022

Printed Name: Khadijah Sidique

Stage Name: Kitten

**Bone's Cabaret (Company):**

Signature: Denise Worl_ Date: 5/23/22

Printed Name: Denise Worl

(Bone's Cabaret Manager)

Please attach:

Photo ID
City of Scottsdale AB Permit

THUMB PRINT OF LICENSEE

## Skin Cabaret Entertainer Performance Lease

This Lease is entered into by and between Skin Cabaret ("company") and:

Stage Name: _Alice_

Full Given Name: _Yolanda Nicole Poston_ ("Contractor")

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Contractor" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractor" may perform as a lease,

Now, Therefore, the parties are bound by the following:

1. Company and contractor intend to create a lessor—lessee relationship. Company and Contractor shall not be constructed as joint ventures, employer/employee, contractor/independent contractor, partners, or agents of each other and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.
2. It is the intent and purposes of this agreement to create a legal relationship of lessor—lessee. Company and Contractor expressly acknowledge that the status created between the Company and Contractor is that of a lease for use of the premises. (a) Contractor shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Contractor at the premises. (b) Contractor acknowledges that Company will not be responsible for Worker's Compensation on behalf of Contractor, will not carry any coverage for Contractor, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this lease is the exclusive responsibility of Contractor. (c) Contractor acknowledges and agrees that in the event that any governing federal or state agency determines that the relationship between Company and Contractor is other than that expressly stated in this paragraph, Contractor will reimburse and hold the company harmless from any and all monies determined to be due and owing by Contractor. (d) if Contractor initiates or supports any assertion that the relationship is anything other than as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and experiences incurred by Company, including actual and reasonable attorney's fees in defending such action.
3. Company will give Contractor access to its premises during normal operating hours for Contractor's performances. The scheduling of performances shall be determined by Contractor in consultation with Company. Contractor shall pay Company lease payments in predetermined rates set by company.
4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Contractor.
5. Contractor shall be paid exclusively by patrons of Company.
6. Contractor agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.
7. Contractor agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Contractor's performances or services rendered at Company's premises or business location which result from Contractor's non-compliance.
8. Contractor shall hold Company harmless from any claims, lawsuits, judgements or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.

9. Either Company or Contractor may terminate this lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this lease without notice in the event of any material breach by Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this lease which is incapable of resolution will be resolved by arbitration before one (1) in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this agreement and shall in no way affect any other provision of this lease or the validity or enforceability of this lease. In the event any such provision (The Applicable Provision) is so adjudged void or unenforceable, Company and Contractor shall takes the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligation pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this lease shall not operate or be construed as a waiver of any subsequent breach by the Contractor.

This lease is the entire agreement between Company and Contractor and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin Cabaret (Company):

Signature: _____ Date: _____

Printed Name: _____

Contractor:

Signature: _____ Date: 07/03/20ᵤ

Printed Name: _____

Stage Name: _____

Contractor's Thumbprint

## Skin Cabaret Entertainer Performance Lease

This Lease is entered into by and between Skin Cabaret ("company") and:

Stage Name: _Tatana_

Full Given Name: _Gylinda Nichole Pashran_ ("Contractor")

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Contractor" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractor" may perform as a lease,

Now, Therefore, the parties are bound by the following:

1. Company and contractor intend to create a lessor—lessee relationship. Company and Contractor shall not be constructed as joint ventures, employer/employee, contractor/independent contractor, partners, or agents of each other and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.
2. It is the intent and purposes of this agreement to create a legal relationship of lessor—lessee. Company and Contractor expressly acknowledge that the status created between the Company and Contractor is that of a lease for use of the premises. (a) Contractor shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Contractor at the premises. (b) Contractor acknowledges that Company will not be responsible for Worker's Compensation on behalf of Contractor, will not carry any coverage for Contractor, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this lease is the exclusive responsibility of Contractor. (c) Contractor acknowledges and agrees that in the event that any governing federal or state agency determines that the relationship between Company and Contractor is other than that expressly stated in this paragraph, Contractor will reimburse and hold the company harmless from any and all monies determined to be due and owing by Contractor. (d) if Contractor initiates or supports any assertion that the relationship is anything other than as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and experiences incurred by Company, including actual and reasonable attorney's fees in defending such action.
3. Company will give Contractor access to its premises during normal operating hours for Contractor's performances. The scheduling of performances shall be determined by Contractor in consultation with Company. Contractor shall pay Company lease payments in predetermined rates set by company.
4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Contractor.
5. Contractor shall be paid exclusively by patrons of Company.
6. Contractor agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.
7. Contractor agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Contractor's performances or services rendered at Company's premises or business location which result from Contractor's non-compliance.

8. Contractor shall hold Company harmless from any claims, lawsuits, judgements or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.

9. Either Company or Contractor may terminate this lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this lease without notice in the event of any material breach by Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this lease which is incapable of resolution will be resolved by arbitration before one (1) in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this agreement and shall in no way affect any other provision of this lease or the validity or enforceability of this lease. In the event any such provision (The Applicable Provision) is so adjudged void or unenforceable, Company and Contractor shall takes the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligation pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this lease shall not operate or be construed as a waiver of any subsequent breach by the Contractor.

This lease is the entire agreement between Company and Contractor and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin Cabaret (Company):

Signature: _K̲a̲t̲y̲ ̲R̲o̲b̲i̲s̲o̲n̲_____   Date: _8/30/17_____

Printed Name: _Katy Robison_____

Contractor:

Signature: _Orlinda M. Pastran_____   Date: _08/30/17_____

Printed Name: _Orlinda Pastran_____

Stage Name: _Tatiana_____

Contractor's Thumbprint

## Skin Cabaret Entertainer Performance Lease

This Lease is entered into by and between Skin Cabaret ("company") and:

Stage Name: *Rocket*

Full Given Name: *Ramana Rayborn* ("Contractor")

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Contractor" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractor" may perform as a lease,

Now, Therefore, the parties are bound by the following:

1. Company and contractor intend to create a lessor—lessee relationship. Company and Contractor shall not be constructed as joint ventures, employer/employee, contractor/independent contractor, partners, or agents of each other and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purposes of this agreement to create a legal relationship of lessor—lessee. Company and Contractor expressly acknowledge that the status created between the Company and Contractor is that of a lease for use of the premises. (a) Contractor shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Contractor at the premises. (b) Contractor acknowledges that Company will not be responsible for Worker's Compensation on behalf of Contractor, will not carry any coverage for Contractor, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this lease is the exclusive responsibility of Contractor. (c) Contractor acknowledges and agrees that in the event that any governing federal or state agency determines that the relationship between Company and Contractor is other than that expressly stated in this paragraph, Contractor will reimburse and hold the company harmless from any and all monies determined to be due and owing by Contractor. (d) if Contractor initiates or supports any assertion that the relationship is anything other than as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and experiences incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Contractor access to its premises during normal operating hours for Contractor's performances. The scheduling of performances shall be determined by Contractor in consultation with Company. Contractor shall pay Company lease payments in predetermined rates set by company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Contractor.

5. Contractor shall be paid exclusively by patrons of Company.

6. Contractor agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Contractor agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Contractor's performances or services rendered at Company's premises or business location which result from Contractor's non-compliance.

8. Contractor shall hold Company harmless from any claims, lawsuits, judgements or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.

9. Either Company or Contractor may terminate this lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this lease without notice in the event of any material breach by Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this lease which is incapable of resolution will be resolved by arbitration before one (1) in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this agreement and shall in no way affect any other provision of this lease or the validity or enforceability of this lease. In the event any such provision (The Applicable Provision) is so adjudged void or unenforceable, Company and Contractor shall takes the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligation pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this lease shall not operate or be construed as a waiver of any subsequent breach by the Contractor.

This lease is the entire agreement between Company and Contractor and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin Cabaret (Company):

Signature: _Katy Robison_____   Date: _1/17/17_____

Printed Name: _Katy Robison_____

Contractor:

Signature: _Ramona Rayburn_____   Date: _1/17/17_____

Printed Name: _Ramona Rayburn_____

Stage Name: _Rockett_____

Contractor's Thumbprint



# Bone's Cabaret Entertainer Performance Lease

Date 02/08/22

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: _____  ("Licensee")
                        PRINT NAME

Stage Name(s): _____
                        PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1.  Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2.  It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3.  Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4.  All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5.  Licensee shall be paid exclusively by patrons of the Company.

6.  Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7.  Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8.  Licensee shall hold Company harmless from any claims, lawsuits, judgments, or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9.  The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

**APPROVED AND AGREED TO BY:**

**"Licensee":**

Signature: _____   Date: 02/08/22

Printed Name: Jacqueline Hosse

Stage Name: Baby

**Bone's Cabaret (Company):**

Signature: _____   Date: 2-8-22

Printed Name: Chuck Heus

(Bone's Cabaret Manager)

Please attach:

Photo ID
City of Scottsdale AB Permit

THUMB PRINT OF LICENSEE

# Bone's Cabaret Entertainer Performance Lease

Date 02/17/22

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: _Jacqueline    N    Hodge_ ("Licensee")

PRINT NAME



Stage Name(s): _Gwen / Viviann (Baby)_

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours. Licensee's performances. The scheduling of  consultation with

... es set by Company. ... Licensee shall pay Company lease payments in predetermined ... shall be determined by Licensee in

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments, or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

**APPROVED AND AGREED TO BY:**

**"Licensee":**

Signature: _____ Date: 02/17/22

Printed Name: Jacqueline Hodge

Stage Name: ~~Hester~~ / Viviann
            Gwen

**Bone's Cabaret (Company):**

Signature: _____ Date: 2-17,22

Printed Name: Chuck Hug

(Bone's Cabaret Manager)

Please attach:

Photo ID
City of Scottsdale AB Permit

THUMB PRINT OF LICENSEE

Date _B 26 19_

# Bone's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: _Angeles A Ramrez Vazquez_ ("Licensee")

PRINT NAME

Stage Name(s): _Angel_

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor -- lessee relationship.  Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor -- lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises.  (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises.  (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation

law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee.  (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee.  (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances.  The scheduling of performances shall be determined by Licensee in consultation with Company.  Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA").  The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award.  In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties.  Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease.  In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and

(iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Bone's Cabaret (Company):

Signature: _____ Date: _8·26·19_____

Printed Name: _____
           (Bone's Cabaret Manager)

"Licensee":

Signature: _____ Date: _8 26 19_____

Printed Name: _Angeles Ramirez Vazquez_

Stage Name: _Angel_____



Thumb Print of Licensee

Date 10/23/20

## Bone's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: _Angeles A. Ramirez Vazquez_____ ("Licensee")

PRINT NAME

████████████████████████████████████████████████

Stage Name(s): _Angel_____

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the

premises.  (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee.  (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee.  (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3.  Company will give Licensee access to its premises during normal operating hours for Licensee's performances.  The scheduling of performances shall be determined by Licensee in consultation with Company.  Licensee shall pay Company lease payments in predetermined rates set by Company.

4.  All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5.  Licensee shall be paid exclusively by patrons of the Company.

6.  Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7.  Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8.  Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9.  The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10.  Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA").  The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award.  In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11.  The decision or award of the arbitrator shall be final and binding upon the parties.  Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12.  If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease.  In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in

good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

"Licensee":

Signature: _____ Date: 10·23·20

Printed Name: Angeles Ramirez V.

Stage Name: Angel

Bone's Cabaret (Company):

Signature: _____ Date: 10-28-20

Printed Name: Chuck Huus
            (Bone's Cabaret Manager)

THUMB PRINT OF LICENSEE



Date _1-17-20_

## Bone's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: _Elizabeth A Rosko-Miklosi_ ("Licensee")

PRINT NAME

Stage Name(s): _Valerie_

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1.  Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.
2.  It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation

law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3.  Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4.  All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5.  Licensee shall be paid exclusively by patrons of the Company.

6.  Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7.  Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8.  Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9.  The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and

(iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Bone's Cabaret (Company):

Signature: _____   Date: 1-17-20 _____

Printed Name: _Chuck Arms_____
(Bone's Cabaret Manager)

"Licensee":

Signature: _Elizabeth Miklosi_   Date: 1-17-20 _____

Printed Name: _Elizabeth Miklosi_____

Stage Name: _Valerie_____



Thumb Print of Licensee



Date 12-6-19

## Bone's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: Elizabeth Rasko-Miklosi ("Licensee")

PRINT NAME

Stage Name(s): Gabrielle Valarie

PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.
2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the premises. (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation

law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee. (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee. (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Licensee access to its premises during normal operating hours for Licensee's performances. The scheduling of performances shall be determined by Licensee in consultation with Company. Licensee shall pay Company lease payments in predetermined rates set by Company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5. Licensee shall be paid exclusively by patrons of the Company.

6. Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8. Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9. The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease. In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and

    (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

<u>Bone's Cabaret (Company)</u>:

Signature: _____   Date: _12-6-19_____

Printed Name: ___oHuck HUW_____
          (Bone's Cabaret Manager)

<u>"Licensee"</u>:

Signature: _Elizabeth Miklosi_____   Date: _12-6-19_____

Printed Name: _Elizabeth Rasko-Miklosi_

Stage Name: _Gabrielle_____



Thumb Print of Licensee

# Skin cabaret Entertainer Performance Lease

This Lease is entered into by and between Skin Cabaret ("Company") and:

Stage Name: _____AVA OENNA_____

Full Given Name: _____Lana Baumgartner_____ ("Contractor")

Whereas the company operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the company's gross incomes; and

nightclub; and

Whereas, the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractors" may perform as a lease,

Now, Therefore, the parties are bound by the following:

1.  Company and contractors intend to create a lessor-lessee relationship. Company and Contractor shall not be constructed as joint ventures, employer/employee, contractor/independent contractor, partners or gents of each other and neither shall have the power to bind or obligate the other, except to the extent to set forth in this lease.
2.  It is the intent and purpose of this agreement to create a legal relationship of lessor-lessee. Company and contractor expressly acknowledge that the statues created between  the company and contractor is that of a lease for use of the premise. (a) Contractor shall exclusively be responsible for and shall pay all federal , state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by the Contractor  at the premises. (b)Contractor acknowledge that Company will not be responsible for Worker's Compensation on behalf of Contractor, will not carry any coverage for Contractors, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this lease is the exclusive responsibility of Contractor. (c) Contractors acknowledge and agree that in the event that any governing federal or state agency determines that the relationship between Company and Contractors is other than that expressly stated in this paragraph, Contractor will reimburse and hold the company is other than that expressly stated in this paragraph, Contractors will reimburse and hold the company harmless from any and all monies determines to be due and owing by Contractor. (d) if Contractor initiates or supports any assertion that the relationship is anything other than as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and experiences incurred by Company , including actual and reasonable attorney's fees in defending such action
3.  Company will give Contractor access to its premise during normal operating hours for Contractor's performances. The scheduling of performances shall be determines by Contractors in consultation with Company. Contractors shall pay Companies Company lease payments in predetermined rates set by Company.
4.  All expenses associated with any performances (costumes, props, advertising, etc.) are the responsibility of Contractor.
5.  Contractor shall be paid exclusively by patrons of Company.
6.  Contractor agrees to abide by all ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.
7.  Contractor agrees that he/she will not violate any law or statue regarding: prostitution, obscenity,  or unlawful pornographic performances and will hold company harmless for attorney fees, fines, and costs arising out of Contractors performances or services rendered at Company's premises or business location which results from Contractor's non-compliance.
8.  Contractor shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.
9.  Either Company or Contractor may terminate this lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this lease without notice in the event of any material breach by the Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.
10. Any dispute or claim arising under or with respect to this lease which is incapable of resolution willl be resolved by arbitration of the American Arbitration Association("AAA"). The appointing agency shall be the AAA and the arbitrator  shall apply Arizona law to both interpret this lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damage arising out of this lease, even if said party has been advised of the possibility of such damage.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provisions of this lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this agreement and shall in no way affect any other provision of this lease or the validity of enforceability of this lease. In the event any such provisions( The Applicable Provision) is so adjudged void or enforceable, Company and Contractor shall takes the following actions in the following order: (I) seed judicial information of the Applicable Provisions;(ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and(iii) have an arbitration as provided herein to determine a lawful replacement provision for Applicable Provision; provided, however, that no such action pursuant to either clauses (I) or (ii) above shall increase n any respect the obligation pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this lease shall not operate or be construed as a waiver of any subsequent breach by the Contractor.

This lease is the entire agreement between Company and Contractor and may not be modified except in writing.

APPROVED AND AGREED TO BY:

SKIN Cabaret(Company)

Signature: _____ *Flores* _____   Date: *12/1/17*

Printed Name: *Jesus Flores*

Contractor:

Signature: _____ *Manning* _____   Date: *10·1·17*

Printed Name: *Lana Braunfaynel*

Stage Name: *AVA GIENNA*

Contractor's Thumbprint

## Skin Cabaret Entertainer Performance Lease

This Lease is entered into by and between Skin Cabaret ("company") and:

Stage Name: _Jenny_

Full Given Name: _Jenny Lynn Hamm_ ("Contractor")

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Contractor" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Contractor" access to its premises in which the "Contractor" may perform as a lease,

Now, Therefore, the parties are bound by the following:

1. Company and contractor intend to create a lessor—lessee relationship. Company and Contractor shall not be constructed as joint ventures, employer/employee, contractor/independent contractor, partners, or agents of each other and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purposes of this agreement to create a legal relationship of lessor—lessee. Company and Contractor expressly acknowledge that the status created between the Company and Contractor is that of a lease for use of the premises. (a) Contractor shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Contractor at the premises. (b) Contractor acknowledges that Company will not be responsible for Worker's Compensation on behalf of Contractor, will not carry any coverage for Contractor, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this lease is the exclusive responsibility of Contractor. (c) Contractor acknowledges and agrees that in the event that any governing federal or state agency determines that the relationship between Company and Contractor is other than that expressly stated in this paragraph, Contractor will reimburse and hold the company harmless from any and all monies determined to be due and owing by Contractor. (d) if Contractor initiates or supports any assertion that the relationship is anything other than as set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Contractor shall pay to Company all additional costs and experiences incurred by Company, including actual and reasonable attorney's fees in defending such action.

3. Company will give Contractor access to its premises during normal operating hours for Contractor's performances. The scheduling of performances shall be determined by Contractor in consultation with Company. Contractor shall pay Company lease payments in predetermined rates set by company.

4. All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Contractor.

5. Contractor shall be paid exclusively by patrons of Company.

6. Contractor agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7. Contractor agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Contractor's performances or services rendered at Company's premises or business location which result from Contractor's non-compliance.

8. Contractor shall hold Company harmless from any claims, lawsuits, judgements or awards arising out of Contractor's negligence, criminal acts, or willful misconduct.

9. Either Company or Contractor may terminate this lease by giving the other party ten (10) days written notice of intent to terminate. In addition, Company may terminate this lease without notice in the event of any material breach by Contractor, violation of any federal, state, or local law or for any unprofessional conduct by Contractor while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this lease which is incapable of resolution will be resolved by arbitration before one (1) in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA"). The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this lease and fashion an award. In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties. Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this agreement and shall in no way affect any other provision of this lease or the validity or enforceability of this lease. In the event any such provision (The Applicable Provision) is so adjudged void or unenforceable, Company and Contractor shall takes the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligation pursuant to the Applicable Provision.

13. A waiver by Company of a breach of any provision of this lease shall not operate or be construed as a waiver of any subsequent breach by the Contractor.

This lease is the entire agreement between Company and Contractor and may not be modified except in writing.

APPROVED AND AGREED TO BY:

Skin Cabaret (Company):

Signature: _____   Date: _____

Printed Name: _____

Contractor:

Signature: _____   Date: 6-21-2016

Printed Name: _____

Stage Name: _____

Contractor's Thumbprint

Date 10·19 21

## Bone's Cabaret Entertainer Performance Lease

This Entertainer Performance Lease is entered by and between Bone's Cabaret ("Company") and:

Full Given Name: _Janessa   Janell      Galvan_ ("Licensee")
PRINT NAME

Stage Name(s): _Novah, Lilith_
PRINT NAME

Whereas, the "Company" operates a nightclub in which it sells alcoholic beverages for consumption on premises by its patrons, which sales account for substantial amount of the Company's gross income; and

Whereas, the "Licensee" is a professional entertainer who wishes to perform at the "Company's" nightclub; and

Whereas, the "Company" is willing to provide the "Licensee" access to its premises in which the "Licensee" may perform as a lessee,

Now, Therefore, the Parties are bound by the following:

1. Company and Licensee intend to create a lessor – lessee relationship. Company and Licensee shall not be constructed as joint ventures, employer/employee, licensee/ independent licensee, partners, or agents of each other, and neither shall have the power to bind or obligate the other, except to the extent set forth in this lease.

2. It is the intent and purpose of this agreement to create a legal relationship of lessor – lessee. Company and Licensee expressly acknowledge that the status created between the Company and Licensee is that of a lease for use of the premises. (a) Licensee shall exclusively be responsible for and shall pay all federal, state, and local taxes and contributions imposed upon or required to be paid in connection with any income earned by Licensee at the

premises.  (b) Licensee acknowledges that Company will not be responsible for Worker's Compensation on behalf of Licensee, and that any coverage (under Worker's Compensation law or otherwise) for injury or illness occurring during the performance of this Lease is the exclusive responsibility of Licensee.  (c) Licensee acknowledges and agrees that in the event any governing federal or state agency determines that the relationship between Company and Licensee is other than that expressly stated in this paragraph, Licensee will reimburse and hold the Company harmless from any and all monies determined to be due and owing by Licensee.  (d) If Licensee initiates or supports any assertion that the relationship is anything other than set forth in this paragraph, then in addition to the reimbursement provided for by this paragraph, Licensee shall pay to Company all additional costs and expenses incurred by Company, including actual and reasonable attorney's fees in defending such action.

3.  Company will give Licensee access to its premises during normal operating hours for Licensee's performances.  The scheduling of performances shall be determined by Licensee in consultation with Company.  Licensee shall pay Company lease payments in predetermined rates set by Company.

4.  All expenses associated with any performance (costumes, props, advertising, etc.) are the responsibility of Licensee.

5.  Licensee shall be paid exclusively by patrons of the Company.

6.  Licensee agrees to abide by all the ordinances of the City of Scottsdale and the laws of the State of Arizona regulating topless dancing and/or adult performances.

7.  Licensee agrees that he/she will not violate any law or statute regarding: prostitution, obscenity, or unlawful pornographic performances and will hold Company harmless for attorney fees, fines, and costs arising out of Licensee's performance or services rendered at Company's premises or business location which result from Licensee's non-compliance.

8.  Licensee shall hold Company harmless from any claims, lawsuits, judgments or awards arising out of Licensee's negligence, criminal acts, or willful misconduct.

9.  The Company may terminate this Lease without notice in the event of any material breach, by Licensee, of any violation of any federal, state, or local law or for any unprofessional conduct by Licensee while on the premises of the Company.

10. Any dispute or claim arising under or with respect to this Lease which is incapable of resolution will be resolved by arbitration before one (1) arbitrator in Phoenix, Arizona in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA").  The appointing agency shall be the AAA and the arbitrator shall apply Arizona law to both interpret this Lease and fashion an award.  In no event will Company be liable for any direct, indirect, punitive, incidental, special or consequential damages arising out of this Lease, even if said party has been advised of the possibility of such damages.

11. The decision or award of the arbitrator shall be final and binding upon the parties.  Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.

12. If any provision of this Lease, as applied to either party or to any circumstances, shall be adjudged to be void or unenforceable, the same shall be deemed stricken from this Agreement and shall in no way affect any other provision of this Lease or the validity or enforceability of this Lease.  In the event any such provision (the "Applicable Provision") is so adjudged void or unenforceable, Company and Licensee shall take the following actions in the following order: (i) seek judicial reformation of the Applicable Provision; (ii) negotiate in

good faith with each other to replace the Applicable Provision with a lawful provision; and (iii) have an arbitration as provided herein to determine a lawful replacement provision for the Applicable Provision; provided, however, that no such action pursuant to either clauses (i) or (ii) above shall increase in any respect the obligations pursuant to the Applicable *Provision*.

13. A waiver by Company of a breach of any provision of this Lease shall not operate or be construed as a waiver of any subsequent breach by the Licensee.

This Lease is the entire agreement between Company and Licensee and may not be modified except in writing.

APPROVED AND AGREED TO BY:

"Licensee":

Signature: _____   Date: 10.19.21

Printed Name: Janessa Galvan

Stage Name: Novah

Bone's Cabaret (Company):

Signature: _____   Date: 10/19/21

Printed Name: Sarah D. Saiz
(Bone's Cabaret Manager)

THUMB PRINT OF LICENSEE